49 N.J. Super. 85 (1958)
139 A.2d 37
MARGARET J. HOULIHAN, AN INFANT, BY HER GUARDIAN AD LITEM, MILDRED HOULIHAN, AND MILDRED HOULIHAN, INDIVIDUALLY, PLAINTIFFS,
v.
MILDRED C. RAYMOND AND MARY C. CRANE, JR., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 14, 1958.
*87 Messrs. McCarter, English & Studer (Mr. Francis E.P. McCarter appearing), attorneys for petitioners.
Messrs. Emory, Langan, Lamb & Blake (Mr. Paul Thompson appearing), attorneys for plaintiffs-respondents.
GIORDANO, J.C.C. (temporarily assigned).
This matter is before the court on return of order to show cause whereby Edward M. Crane, Jr., seeks a judgment against Margaret J. Houlihan, an infant, by her guardian ad litem, Mildred Houlihan, in the sum of $1,427.07, which monies are on deposit with the clerk of this court pursuant to order made on the 15th day of Nevember 1957.
Edward M. Crane, Jr., employed Margaret J. Houlihan, 17 years of age, to take care of his children during the summer. While she was 17 years old and without working papers, she was injured in the course of her employment in an automobile accident. Thereafter she recovered an award in workmen's compensation proceedings. Since the employment was illegal, the employee received a double award, the insurance carrier paying the initial amount and Mr. Crane being required to match this. The entire amount has long since been paid to her.
Subsequently the infant started a suit in the Superior Court of New Jersey for damages against the owners of the two cars involved in the accident  namely, Mildred Raymond and Mary C. Crane  for the alleged negligently inflicted injuries. During the trial a settlement was effected for $3,000. Since both the insurance carrier and Mr. Crane have demanded reimbursement for the sums paid to Miss Houlihan, an order was made directing payment of the $3,000 into court.
There is no question as to the right of the insurance carrier to reimbursement. The only matter before the court is Mr. Crane's application for an order directing reimbursement to him as well in the sum of $1,427.07, pursuant to N.J.S.A. 34:15-40.
*88 Because N.J.S.A. 34:15-10, dealing with the employment of minors, is to be interpreted, it is appropriate to set forth a portion of that section. It provides that:
"* * * a minor under 14 years of age employed in violation of the labor law or a minor between 14 and 18 years of age employed, permitted or suffered to work without an employment certificate, * * * a compensation or death benefit shall be payable to the employee or his dependents which shall be double the amount payable under the schedules * * *." (Italics supplied)
It is further provided that:
"The employer alone and not the insurance carrier shall be liable for the extra compensation or death benefit * * *. Any provision in an insurance policy undertaking to relieve an employer from the liability for the extra compensation or extra death benefit shall be void.
Nothing in this chapter contained shall deprive an infant under the age of 18 years of the right or rights now existing to recover damages in a common law or other appropriate action or proceeding for injuries received by reason of the negligence of his or her master." (Emphasis supplied)
This proceeding is brought pursuant to N.J.S.A. 34:15-40:
"Where a third person is liable to the employee or his dependents for an injury or death, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein. In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided."
The issue to be decided is whether an employer ordered to personally pay a sum equal to the amount of a compensation award because he has illegally employed a minor in violation of the Child Welfare Law is entitled to reimbursement of this sum where the illegally employed minor is injured as a result of a third party's negligent act. This issue is to be considered in the light of the provisions *89 of N.J.S.A. 34:15-40, construed in conjunction with the provisions of N.J.S.A. 34:15-10. The latter section was first enacted as L. 1911, c. 95, par. 9, which set forth a presumption of the applicability of Section II (Child Labor Law) in the employment of minors unless notice to the contrary was given. Paragraph 9 was amended by L. 1924, c. 159, par. 1, to the end that in the case of an injured employee under 14 years of age employed in violation of the labor law, or a minor between 14 and 16 years of age employed without an age or schooling certificate or at an occupation prohibited at that age by the labor law, "* * * a compensation or death benefit shall be payable * * * which shall be double the amount payable under schedule * * *." This amended section further provided that the extra compensation could not be covered by insurance and also reserved for an infant under the age of 16 the right or rights existing under the common law for injuries received by reason of employer's negligence.
It is significant that the Legislature reserved for all minors 16 years of age and under their rights under the common law for injuries received due to an employer's negligence. The legislative intent was to put injured minors in a more favorable position than other employees with regard to injuries caused by the negligent acts of their employers. Wilson v. Newark Smelting and Refinery Co., 26 N.J. Misc. 51 (Com. Pl. 1945).
The statement attached to the original bill pertaining to this amendment set forth that the purpose of the act was to bring illegally employed children under the compensation act. It provides:
"This act follows the New York Law by providing that illegally employed minors shall receive double the compensation, if injured, to which they would have been entitled for similar injuries if lawfully employed. It does not affect in any way the legal employment of minors."
The purpose of this statute appears obvious: to wit, bring about strict compliance with the labor laws in the *90 employment of minors. Where the employer fails to comply, he shall personally suffer the imposition of a penalty, personally levied and not to be covered by insurance, equal to the amount of the compensation award for the injury sustained.
Suits for penalties are neither criminal or quasi-criminal in nature, but civil. Such offenses are punishable, as the name implies, by penalties. Johnson v. Barclay, 16 N.J.L. 1 (Sup. Ct. 1837); cited with approval in Sawran v. Lennon, 19 N.J. 606, 612 (1955). In the latter case, on page 612, Chief Justice Vanderbilt noted:
"Penalty actions, moreover, unlike fines in criminal cases and in proceedings against disorderly persons, may involve sanctions which may enure to the benefit of private individuals, * * *." (Emphasis supplied)
The court went on to note that:
"The clear purpose both of quasi-criminal proceedings against disorderly persons and civil suits for penalties is to provide a summary action for the disposition of minor offenses free from indictment and trial by jury in cases not deemed sufficiently important to call for indictment and trial by jury, which methods if applied to a vast number of cases would inevitably clog the courts.
Suits for penalties, moreover, must always be construed strictly according to their clear intendment. State v. Meinken, 10 N.J. 348, 352 (1952); Mayor & Council of Alpine Borough v. Brewster, 7 N.J. 42, 51, 52 (1951). See also Wharton, Criminal Law (12th ed.) § 40, where it is noted that:
`In construing such statutes, however, we are to look for their reasonable sense, and if this is clearly ascertained it must be applied, though a narrower sense is possible. The courts are, on the one hand, to refuse to "extend the punishment to cases which are not clearly embraced" in the statutes; on the other hand, to refuse, "by any mere verbal nicety, forced construction or equitable interpretation, to exonerate parties plainly within their scope." At the same time, in matters of reasonable doubt, this doubt is to tell in favor of liberty and life.'"
The law as set forth in the foregoing justifies a conclusion that the assessment is a penalty. The determination that this added assessment was meant to be a penalty is further buttressed by the presence of an express *91 prohibition declaring void any insurance policy which undertakes to relieve an employer from liability for this extra compensation. The Legislature envisioned this as a way of bringing employers to the realization that failure to comply with the child labor laws could be expensive and that compliance was advantageous.
That this provision was meant to be a penalty and act as a deterrent against illegal employment of minors is brought out by the amendment to this section found in L. 1940, c. 176, par. 1, where it is stated that "nothing in this section regarding the payment of a compensation or death benefit in double the amount payable under the schedules * * * shall apply to employees, of the age of sixteen or under, employed in summer camps operated by the Boy Scouts of America, the Girl Scouts of America, the Knights of Columbus, the Y.M.C.A., the Y.W.C.A., the Y.M.H.A., or any domestic corporation organized solely for religious or charitable purposes." (Emphasis supplied) The statement indicating the legislative intendment reads as follows:
"The purpose of this act is to remove the burden on the employer of double indemnity in the employment of a minor in summer camps operated by the Boy Scouts of America, the Girl Scouts of America and like institutions."
The exemption is given only to organizations working with children. Because of this one reaches the inescapable conclusion that it was given to encourage such groups to continue their work with children and continue the use of minor employees. The benefit to such minor employees must have been deemed to outweigh any departure from strict compliance with the child labor laws. Significantly, this amendment has been twice re-enacted despite a thorough revision of the act in 1945 and amendment of this specific section in 1956.
As may be gleaned from its preamble, the Child Labor Act was designed to limit and regulate child labor. The act regulates the types of work and also whether *92 certain children should be permitted to work at all, lest the individual child might be impeded in his progress, his health injured or his education interfered with even in permissive employment. Murray v. Hudson Dispatch, 42 N.J. Super. 532, 536 (Cty. Ct. 1956). The Legislature requires a child desiring permissive employment to obtain working papers, the issuing officer in each case to determine whether the particular employment will impede, injure, or interfere with the progress, health and education of a child. N.J.S.A. 34:2-21.8, 15.
There are several rules of statutory construction which are helpful in resolving the meaning to be placed on these sections. The reason for the law  i.e., the motive which led to the making of it  is one of the most certain means of establishing the true sense of the words. Valenti v. Board of Review of Unemployment Compensation Commission, 4 N.J. 287 (1950); In Re Roche's Estate, 16 N.J. 579 (1954). In the present situation the legislative intent emerges from the spirit and policy of the statute rather than the literal sense of particular terms. Caputo v. The Best Foods, 17 N.J. 259, 264 (1955).
Being satisfied that the legislative intent was to assess a penalty against an employer where an illegally employed minor was injured, the last point to be disposed of is whether the amount of this penalty should be paid back to the employer when a third person's negligence caused the injury. The answer to this comes easily when one asks why the employer is assessed a penalty. Is the penalty imposed because the employer negligently caused the injury or because the minor was illegally employed? The cases and the statute support the conclusion that double compensation is levied due to the illegal employment. See Damato v. De Lucia, 110 N.J.L. 380 (E. & A. 1933); El v. Newark Star Ledger, 131 N.J.L. 373 (Sup. Ct. 1944); Wilson v. Newark Smelting and Refinery Co., supra. Reimbursement in the case of a penalty for illegal employment would not be justified under N.J.S.A. 34:15-40 when construed in conjunction with the plain legislative intent evinced by *93 the preceding study of the legislative history of N.J.S.A. 34:15-10.
Yet another reason for denying reimbursement to the employer comes to mind. The court in United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 165 (1950), referring to the successive acts amending the reimbursement section, stated that "the purpose * * * was to set up a comprehensive plan within the structure of the Workmen's Compensation Act for regulating and marshaling the rights and responsibilities of the several parties concerned in compensation payments where * * * injury * * *" is due to the fault of a third party. The compensation legislation was retained for the benefit of the injured employee by common-law action against third parties. In the method devised to accomplish this legislative plan, we perceive a purpose to restrict the employer and his insurance carrier to the method of reimbursement provided for in the act  i.e., through the right of the injured employee against the third-party wrongdoer. It will be observed, in referring to N.J.S.A. 34:15-40(f), that such right is given to the employer or his insurance carrier with proviso that "* * * such right of action shall be only for such right of action that the injured employee or his dependents would have had against the third person or corporation * * *." See U.S. Casualty Co. v. Hercules Powder Co., supra, 4 N.J. at page 166.
As was said in the case of Prudential Insurance Co. v. Laval, 131 N.J. Eq. 23, 26 (Ch. 1942), the clear legislative intent is to establish a scheme for compensation of an injured employee or his surviving dependents by the employer or his insurance carrier on the one hand, and on the other to give the latter a right to reimbursement for the compensation so paid by them out of any damages which may be recovered from the third-party tort-feasor liable for the employee's injuries.
The measure of damage in tort actions does not include statutory penalties. Yet the employer herewith seeking reimbursement argues that he has the right to *94 reimbursement. If the employer's contention is correct, he would succeed to greater rights than the employee himself against a third party. Clearly this is contrary to the cases herein cited and most particularly U.S. Casualty Co. v. Hercules Powder Co., supra.
The application for reimbursement by the employer is against public policy and is therefore denied for the foregoing reasons. Accordingly the order to show cause is dismissed.