162 N.J. Super. 227 (1978)
392 A.2d 641
NATIONAL GRANGE MUTUAL INSURANCE CO., PLAINTIFF,
v.
JOHN SCHNEIDER AND EDWARD MUELLER, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
CHRISTOPHER CARBONARO, AN INFANT BY HIS G/A/L LILLIAN CARBONARO, INDIVIDUALLY, U.S. SLICING MACHINE CO., SERKEL INC., U.S. BERKEL CO., PROCTOR SILEX CORP./GENERAL EQUIPMENT CO., DEFENDANTS,
v.
BIERTUEMPFEL-OSTERTAG AGENCY, INC., ROBERT P. OSTERTAG AND DIETER POLEDNIK, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 14, 1978.
*228 Mr. William Voorhees for plaintiff (Messrs. Jung, Wilson & Voorhees, attorneys).
Mr. Stanley Greenfield, attorney for defendants and third-party plaintiffs John Schneider and Edward Mueller.
Mr. Eugene Horn for defendants Carbonaro (Messrs. Pearlman, Krumholz, Horn & Schectman, attorneys).
Mr. Bertram E. Busch for third-party defendants Biertuempfel-Ostertag Agency, Inc., Robert P. Ostertag and Dieter Polednik (Messrs. Busch & Busch, attorneys).
COHEN, J.C.C. (temporarily assigned).
Christopher Carbonaro was 13 years old during the six weeks or so that *229 he worked at the Carteret Meat Market. He had no employment certificate. No 13-year-old has. N.J.S.A. 34:2-21.7. For much of his short career he worked 60-hour weeks in violation of N.J.S.A. 34:2-21.3. One day, while operating an electric meat grinder, he lost his right arm. It is unlawful to permit anyone under 16 "to work in, about or in connection with power-driven machinery." N.J.S.A. 34:2-21.17. Christopher's employer professes ignorance of his age and total unawareness of the existence, let alone the details, of the child labor laws. In this case it need not be decided whether his lack of knowledge was real or perhaps wilful. Hartford Accident Ins. Co. v. Benevento, 133 N.J.L. 315 (E. & A. 1945).
In this action the employer's insurer seeks a declaration of noncoverage of the injury. Its action was generated by Christopher's starting a civil action for compensatory and punitive damages against the butcher shop proprietors. They called upon plaintiff to defend. It denied coverage under each of two policies it issued to the butcher shop. One was a "Standard Workmen's Compensation and Employee's Liability Policy." The other was a "Special Multiperil Policy" which, as the name suggests, included a broad range of protections. It plainly excluded worker injury arising out of and in the course of employment. It could not lawfully include statutory coverage for worker injury. N.J.S.A. 34:15-87. It really is not involved here.
The workmen's compensation and employer's liability policy was written to satisfy the employer's statutory duty to insure against liability under Title 34, Chapter 15, Articles 1 and 2. N.J.S.A. 34:15-71, 72 and 78. Article 1 describes civil suits for employer negligence which are available to workers whose employment does not include an election for workmen's compensation. In such suits the employer may not raise the common law defenses of assumption of the risk or the fellow-servant rule. N.J.S.A. 34:15-2. Article 2 describes the elective compensation system *230 that is implicitly chosen to govern almost every modern employment.
The employer's duty to insure for Chapter 15 liability is, with irrelevant minor exceptions, universal. Failure to satisfy the duty may be criminal. N.J.S.A. 34:15-79. Policies are written to provide protection for the benefit of the covered workers, and may be enforced by them. N.J.S.A. 34:15-83, 84. The insurer is directly liable to them for benefits. N.J.S.A. 34:15-86. The policy may not lawfully restrict coverage to an exposure less in kind or amount than the employer's Chapter 15 liabilities. "No provision of such policy shall be construed to restrict the liability of the insurer to any stated business, plant, location or employment," unless the excluded business, plant, location or employment is separately insured. N.J.S.A. 34:15-87.
The policy involved here provides two separate coverages. Coverage "A" insures "all compensation and other benefits required of the insured by the workmen's compensation law." If the payment of damages awarded in this court to Christopher Carbonaro is "compensation required of the insured by the workmen's compensation law," then the plaintiff doubtless provides coverage. There is no relevant exclusion in the policy pertaining to Coverage "A".
Coverage "B" insures against "all sums which the insured shall become legally obligated to pay as damages" because of injuries in foreign countries to American workers and because of local injuries to any worker arising out of and in the course of his employment by the insured. Thus, Coverage "B" insures against a claim for work injuries for which the workmen's compensation law "requires" no compensation or other benefits. An example, one supposes, might be a claim by a "casual" employee. It may also provide coverage for "damages" as opposed to "compensation" required by Chapter 15. As to Coverage "B", there is a relevant exclusion. It bars policy application "with respect to any employee employed *231 in violation of law with the knowledge or acquiescence of the insured or any executive officer thereof."[1]
There is nothing in Chapter 15 that permits the exclusion of illegally employed minors or others from policies insuring against Chapter 15 liabilities. Plaintiff's policy implicitly recognizes that fact by not seeking to exclude elective compensation claims by such employees. It is only Coverage "B" claims to which the exclusion purports to apply.
In theory, every employment contract embodies the parties' choice whether to invoke the elective compensation pattern for possible job injuries. They may choose civil suit for negligence, as modified by the statute. Or, they may opt for the statutory benefit schedule, to be paid regardless of employer negligence. But, the choice must be made before the injury. If the worker is under age, his parent or guardian may choose for him.
But the minor has special benefits under N.J.S.A. 34:15-10. First, if he chooses elective benefits for future injuries at the time of his hiring, he may, after injury, change his mind, as Christopher did here. The statute says:
Nothing in this chapter contained shall deprive an infant under the age of 18 years of the right or rights now existing to recover damages in a common law or other appropriate action or proceeding for injuries received by reason of the negligence of his or her master.
Illegally employed minors are even better protected. Not only may they rethink their choice of remedy after injury, but, if they seek elective compensation, they receive double the scheduled amount for their injury.
If they choose their common law remedy, it proceeds in the form of an action under N.J.S.A. 34:15-1. Even the *232 common law defenses abolished by N.J.S.A. 34:15-2 are abolished also for the illegally employed minor who pursues his common law remedy. Chipman v. Cramer, 16 N.J. Misc. 178 (Sup. Ct. 1938). It is of no moment whether the defenses are abolished by Chapter 15 itself, which appears likely, or by the public policy of the child labor law, as Chipman seems to hint by its choice of supporting citations. The result is exactly the same. See also N.J.S.A. 34:15-42.
The Legislature provided for elective compensation for adult and child workers and required insurance coverage for it. It gave both adult and child workers the choice of suit for damages without certain draconian common law defenses. It required insurance coverage for it. The Legislature permitted minors to void an election after injury. Then, according to plaintiff, it decided it did not care if the civil suit, chosen after injury as a special benefit for minors, would have the very same insurance coverage required for civil suits chosen before injury. If plaintiff's position is correct that is, that it may exclude an illegally employed minor's suit for damages  then it may exclude a lawfully employed minor's suit as well. Both arise out of the same reservation in N.J.S.A. 34:15-10. If one is outside the statutory scheme, then so is the other. If plaintiff is right, therefore, an audit choosing a civil remedy has to be covered, but a minor loses coverage by making his choice after rather than before injury. Plaintiff has offered no explanation why the legislators would have wanted to create such a bizarre scheme.
One could argue that the minor's action for damages was neither a creature nor a casualty of Chapter 15 but simply untouched by its enactment. See, e.g., Damato v. DeLucia, 110 N.J.L. 380 (E. & A. 1933). The insurance required by Chapter 15, one could continue, is for remedies furnished thereby. Since the minor's suit merely survives the legislation, an employer need not insure against it.
There are two defects in the argument. First is that the minor's suit is not merely saluted and forgotten by the statute. Rather, it is fitted consciously and appropriately *233 into a complex and balanced system of compensation for work injuries. It is, therefore, more sensibly seen as one of the alternative bases for "payment of any obligation which [the employer] may incur to an injured employee" under Chapter 15. N.J.S.A. 34:15-71, 72.
The second defect is that the conclusion of the argument is so pointless. The statutes we deal with were necessary legislative reactions to 19th Century industrial excesses. The reformers who created workmen's compensation and factory law remedies for injured workers and industrially abused minors simply would not purposely deprive an illegally employed 13-year-old, who claims injury by the negligence of his employer, insurance protection granted routinely to almost everyone else. Similarly, it is not helpful to point out the salutary effect of not insuring illegal employments. Such encouragement for the future is little comfort to the already injured child. Moreover, the same argument would justify withdrawal of insurance where safety and health regulations were violated by the employer. Such a course might cure some violations but at obviously excessive cost to those already injured. If the insurers hesitate to cover illegal employments, perhaps their remedy is reimbursement from the employer and not deprivation of the employee. See 4 Larson, Workmen's Compensation Law, § 94.10.
For all of these reasons, the exclusionary clause for compensatory damages does not apply to Christopher Carbonaro.[2] Either he seeks compensation described in Coverage "A" or he seeks damages under Coverage "B". If it be the former, the exclusion of illegal employments, by its own terms, does not apply. If it be the latter, the exclusion may not be applied to an illegally employed minor, without violating N.J.S.A. 34:15-87.
NOTES
[1] The exclusion of illegal employments under Coverage "B" is common in the industry. Its invocation to deny coverage to an illegally employed child has never been tested in a reported case in New Jersey. Out-of-state authority is either out-dated or applicable only to the local statutory pattern.
[2] Plainly the policy does not cover any claim for punitive damages under Coverage "A", and excludes it under Coverage "B".