172 N.J. Super. 10 (1980)
410 A.2d 696
VARIETY FARMS, INC., A NEW JERSEY CORPORATION, AND JOHN N. BERTINO, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-APPELLANT AND RESPONDENT, AND INSURANCE COMPANY OF NORTH AMERICA, DEFENDANT-APPELLANT AND RESPONDENT, AND ALAN J. SINDONI, A MINOR BY HIS FATHER AND GUARDIAN AD LITEM, ALBERT J. SINDONI, AND ALBERT J. SINDONI AND MARIE SINDONI, HAMMONTON BLUEBERRY EXCHANGE, A NEW JERSEY CORPORATION, PARKHURST FARM & GARDEN SUPPLY, A NEW JERSEY CORPORATION, AND AG-PAK, INC., DEFENDANTS, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1979.
Decided January 16, 1980.
*12 Before Judges SEIDMAN, MICHELS and DEVINE.
J. Peter Davidow argued the cause for appellant-respondent New Jersey Manufacturers Insurance Company (Davidow & Davidow, attorneys; J. Peter Davidow, on the brief).
Gary E. Greenblatt argued the cause for appellant-respondent Insurance Company of North America (Greenblatt & Greenblatt, attorneys; Jay H. Greenblatt, on the brief).
Samuel A. Curcio, argued the cause for plaintiffs-respondents.
William J. Cook argued the cause for defendants-respondents Alan J. Sindoni, a minor, etc., et al. (Brown, Connery, Kulp, Wille, Purnell & Greene, attorneys; William J. Cook on the brief).
*13 Gerald J. Corcoran argued the cause for respondent Hammonton Blueberry Exchange (Lloyd, Megargee, Steedle & Connor, attorneys; Roger C. Steedle on the brief).
Michael J. Cernigliaro argued the cause for respondent Ag-Pak, Inc. (Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys; Michael J. Cernigliaro on the brief).
No brief was filed on behalf of respondent Parkhurst Farm & Garden Supply.
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
These consolidated appeals by two liability insurance carriers involve questions of coverage for a common law, negligence, personal injury action instituted against the insured corporation, Variety Farms, Inc., and its president, John N. Bertino, on behalf of a 15-year-old youth, Alan J. Sindoni, who suffered a serious injury while in the employ of the corporation. Both carriers disclaimed coverage, whereupon the insured and its president filed a declaratory judgment action seeking a determination that the carriers were obligated to afford coverage for and defend them in that suit. The Sindonis, who were joined as defendants, moved for summary judgment, as did plaintiffs.[1] The motions were granted, the trial judge finding as a matter of law that the liability policy issued by New Jersey Manufacturers Insurance Co. (NJM) provided coverage to Variety Farms for compensatory damages and that the one issued by Insurance Company of North America (INA) provided excess coverage to Variety Farms and Bertino for compensatory and punitive damages "over and above the retained limit of such policy."
*14 The complaint in the underlying personal injury action recites that on July 1, 1975 the infant plaintiff was employed by Variety Farms at its plant in Hammonton, where various agricultural products were packaged. He suffered the traumatic amputation of his left arm on that date when it was caught in a moving conveyor roller. The employer and its president were charged with negligence in permitting the infant plaintiff to work in, about or in connection with power-driven machinery, a type of employment prohibited to minors under 16 years of age by N.J.S.A. 34:2 21.17.
At the time of the accident Variety Farms was insured by NJM under a standard workers' compensation and employers' liability policy. NJM was obligated under Coverage A (workers' compensation) of its policy to pay all compensation and other benefits required of the insured by the Workers' Compensation Law. Under Coverage B (employers' liability) it was required to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident ... sustained ... by any employee of the insured arising out of and in the course of his employment...." But Coverage B also contained an exclusion "with respect to any employee employed in violation of law with the knowledge or acquiescence of the insured or any executive officer thereof."
Variety Farms was additionally insured by INA under an Excess Blanket Catastrophe Liability Policy, in which the insurer undertook to indemnify the insured "for the ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages" because of personal injury or property damage.[2] The policy noted in a relevant schedule *15 the existence of a "Standard Workmen's Compensation and Employers' Liability" policy. Unlike the NJM policy, the INA policy covered not only Variety Farms but also Bertino, who was an additional insured thereunder by virtue of his position as an "officer, executive [or] employee" of the company.
In opposition to the motions for summary judgment, NJM relied upon the Coverage B exclusion in its policy. It sought to establish through affidavits, depositions and other documents that the minor was illegally employed with plaintiffs' knowledge or acquiescence. Plaintiffs, on the other hand, contended that the exclusion did not apply unless the employer had actual knowledge that the employment was in violation of law. They maintained that they were unaware of the pertinent statute until advised of it by their attorney following the accident.
INA's position was that it could not lawfully insure against an employer's liability to an employee when both are subject to the Workers' Compensation Law, and that an exclusion to that effect, inadvertently omitted from the policy when it was issued, was later retroactively included by endorsement.

I
We consider first the coverage of the NJM policy. In his letter opinion the trial judge apparently assumed, as had the litigants, that the exclusion under Coverage B was the critical issue to be resolved. He therefore found it necessary to explore factually whether Variety Farms, through its officers or agents, knew that the Child Labor Law, N.J.S.A. 34:2 21.17, forbade the employment of a minor under 16 in, about or in connection with *16 power-driven machinery. He construed the exclusion to require actual knowledge of such law on the part of the employer, and in that regard took into account plaintiffs' denial in answers to interrogatories that they knew it was a violation of law to expose a minor employee under 16 to power-driven machinery. The trial judge rejected as hearsay and untimely NJM's answering affidavit by an associate in its attorneys' office relating a conversation with a representative of the State Wage and Hour Bureau, from which it appeared that plaintiffs had been told of the law and given an abstract of it to post in a conspicuous place. The conclusion reached was that NJM had "failed to produce any competent evidential material that would raise a factual issue" of the applicability of the exclusion; consequently, the trial judge held that the NJM policy covered plaintiffs with respect to the minor's negligence action.
While we agree that the NJM policy provides coverage for that lawsuit, our concurrence with the trial judge's conclusion in that respect is not to be construed as an endorsement of his rationale. Passing the question of whether, despite the trial judge's contrary view, there was a genuine factual dispute concerning the applicability of the exclusion, thus precluding the entry of summary judgment, R. 4:46 2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73 75 (1954), we are firmly convinced on the facts here involved that the exclusion should have had no place whatsoever in the trial judge's consideration and determination of the issue of coverage.
Our concern here is with a youth, then under the age of 16, who concededly had been employed by Variety Farms to work in its packing plant and who, in the course of his employment, suffered a grievous injury. It is not in dispute, at least for the purpose of the declaratory judgment action, that the minor's arm was caught in and traumatically amputated by a power-driven machine. NJM maintained in the trial court that plaintiffs *17 violated N.J.S.A. 34:2 21.17, a section of the Child Labor Law, which provides in part that "[n]o minor under 16 years of age shall be employed, permitted or suffered to work in, about, or in connection with power-driven machinery," thus enabling it to invoke the exclusion in Coverage B "with respect to any employee employed in violation of law with the knowledge or acquiescence of the insured or any executive officer thereof." But if NJM's position is sound, assuming the relevancy of Coverage B, and this would be the logical extension of the trial judge's reasoning, an injured minor knowingly employed "in violation of law" would be denied the protection of statutorily mandated insurance coverage under a policy such as the one herein involved. We cannot suppose that the Legislature ever intended such result.
It has long been the strong social policy of this State to limit and regulate child labor. The solicitude of our Legislature in this regard finds expression in the Child Labor Law, N.J.S.A. 34:2-21.1 et seq., which details at what ages and under what conditions persons under 18 years of age may be employed, and carefully circumscribes the types of work they may do. With specific pertinency here, the statute, as indicated earlier, protects minors from being employed, permitted or suffered to work in, about, or in connection with power-driven machinery.
This legislative concern for the welfare of minors is further exemplified in the Workers' Compensation Law, N.J.S.A. 34:15 1 et seq., which puts injured minors in a more favorable position than other employees. See N.J.S.A. 34:15 10; Chickachop v. Manpower, Inc., 84 N.J. Super. 129, 133 (Law Div. 1964); Houlihan v. Raymond, 49 N.J. Super. 85, 89 (Law Div. 1958). The statute reserves to a minor under the age of 18 years the option to sue for damages in a common law action for injuries received by reason of the negligence of his or her employer, instead of limiting the minor to workers' compensation benefits under N.J.S.A. 34:15 7 et seq., as in the case of *18 adult employees.[3] It also provides that if the injured employee is a minor under 14 years of age employed in violation of the labor law, or between the ages of 14 and 18 "employed, permitted or suffered to work without an employment certificate or special permit if required by law or at an occupation prohibited at the minor's age by law, a compensation or death benefit shall be payable ... double the amount payable under the schedules...."[4] In short, the clear legislative purpose is to give the minor certain additional rights and to deprive him of none, Terlingo v. Belz-Parr, Inc., 106 N.J.L. 221, 223 (E. & A. 1929); although, of course, the minor cannot have both his statutory and his common law remedies. See Watson v. Stagg, 108 N.J.L. 444, 446 (Sup.Ct. 1932).
To implement the social purposes of workers' compensation, a scheme of compulsory insurance has been established by the Legislature. It is entitled the Employees' Liability Insurance Law, N.J.S.A. 34:15-70 et seq., and provides, among other things, that every employer subject to the provisions of Article 2, "Elective Compensation," N.J.S.A. 34:15 7 et seq., "shall forthwith make sufficient provision for the complete payment of any obligation which he may incur to an injured employee, or his dependents under the provisions of said Article 2" (emphasis supplied), see N.J.S.A. 34:15 71, either through a plan of self-insurance or a policy of insurance in a stock or mutual company. See N.J.S.A. 34:15 77 and 78. The Coverage A portion of the NJM policy here involved furnishes such protection.
The exclusion on which NJM relies relates not to the foregoing coverage, but to the Coverage B portion of its policy, which, *19 as explained earlier herein, insures against any obligation an employer may incur for the payment of damages because of bodily injury to an employee arising out of and in the course of his employment. This coverage is intended to apply to an employer who is or may become subject to Article 1 of the statute, N.J.S.A. 34:15-1 through 6, i.e., where as part of the contract of hiring there is an express statement in writing prior to the accident, either in the contract itself or by written notice from the employer to the employee, or vice versa, that the elective compensation article of the statute is not to apply. See N.J.S.A. 34:15-9. But even in such cases the statute mandates the making of sufficient provision for the complete payment of any obligation the employer may incur to the employee. N.J.S.A. 34:15-72.
There may be a question of whether Coverage B applies here, since it is uncontroverted that the required notice not to be bound by Article 2 was given neither by the employer nor by the parent or guardian of the minor. If it does not, the exclusion clearly would have no relevancy. If it does, the issue would arise whether the exclusion, if otherwise factually implicated, would nevertheless be so repugnant to the letter and spirit of the Workers' Compensation Law and contrary to public policy as to be unenforceable in a case such as the one here involved. But we have no hesitancy in concluding that the minor's common law, negligence action must in any event come within the purview of the standard policy such as the one issued by NJM, whether encompassed within Coverage A or Coverage B. This is so because of the employer's statutory duty, under both Article 1 and Article 2, to provide for the complete payment of any obligation he may incur to an injured employee by virtue of the Workers' Compensation Law. Since this duty must be implemented, if not by self-insurance, then by insurance from a company authorized "to engage in workmen's compensation or employers' liability insurance in this state," N.J.S.A. 34:15 78, we cannot conceive of a legislative intent not to include somewhere *20 within such policy the claim of a minor who is injured while at work and opts to pursue his common law remedy for damages against the employer. Consequently, one may argue that it really would not matter, from a practical point of view, which coverage applies. This was essentially the position taken in National Grange Mut. Ins. Co. v. Schneider, 162 N.J. Super. 227 (Law Div. 1978), the facts of which are strikingly like those in the case before us.
In National Grange a minor, 13 years of age, was employed at a meat market despite the lack of an employment certificate. He lost his right arm while operating an electric meat grinder. The employer claimed to have been ignorant of the minor's age and the applicable child labor laws. A common law action was instituted in behalf of the minor. The insurance company denied coverage under its standard workers' compensation and employers' liability policy and filed suit for a declaration of noncoverage. It contended that the employment of the minor was illegal and thus subject to the exclusion clause in Coverage B of the policy.
The trial judge in National Grange rejected the contention. He correctly perceived that the policy was written to satisfy the employer's statutory duty to insure against liability to his injured employee, whether for negligence where the employment, by valid election, is not subject to workers' compensation, or for workers' compensation under the elective system. 162 N.J.Super at 229. It was his concept that Coverage B insures against a claim for work injuries "for which the workmen's compensation law `requires' no compensation or other benefits," as, for example, "a claim by a `casual' employee." Id. at 230. He reasoned further that there was nothing in the statute permitting the exclusion of illegally employed minors "or others from policies insuring against Chapter 15 liabilities." Id. at 231. He expressed the view that where a minor chooses the common law remedy, it proceeds in the form of an action under N.J.S.A. *21 34:15-1. Ibid. Two defects were seen in the argument that the exclusion should apply:
... First is that the minor's suit is not merely saluted and forgotten by the statute. Rather, it is fitted consciously and appropriately into a complex and balanced system of compensation for work injuries. It is, therefore, more sensibly seen as one of the alternative bases for `payment of any obligation which [the employer] may incur to an injured employee' under Chapter 15. N.J.S.A. 34:15-71, 72.
The second defect is that the conclusion of the argument is so pointless. The statutes we deal with were necessary legislative reactions to 19th Century industrial excesses. The reformers who created workmen's compensation and factory law remedies for injured workers and industrially abused minors simply would not purposely deprive an illegally employed 13-year-old, who claims injury by the negligence of his employer, insurance protection granted routinely to almost everyone else....
For all these reasons, the exclusionary clause for compensatory damages does not apply to Christopher Carbonaro. Either he seeks compensation described in Coverage "A" or he seeks damages under Coverage "B". If it be the former, the exclusion of illegal employments, by its own terms, does not apply. If it be the latter, the exclusion may not be applied to an illegally employed minor, without violating N.J.S.A. 34:15-87. [162 N.J. Super. at 232 233.]
We are substantially in accord with much of the foregoing. As we have said, the Child Labor Law does not allow minors under 16 years of age to be "employed, permitted or suffered to work in, about or in connection with power-driven machinery." A violation of the statutory provision constitutes negligence and, in a minor's common law action, results in liability if the violation is the proximate cause of the minor's injuries. Gabin v. Skyline Cabana Club, 54 N.J. 550, 554 (1969). The Legislature, in adopting the workers' compensation statute, carefully reserved to a work-injured minor his common law action for negligence against the employer. Clearly implicit therein is the recognition that the employer might thereby incur an obligation to the injured minor, apart from workers' compensation benefits, for the complete payment of which the employer would be required to make sufficient provision through self-insurance *22 or by obtaining a standard workers' compensation and employers' liability policy. N.J.S.A. 34:15 71, 72, 77, 78. We find no provision in this or in any other pertinent statute which relieves the employer of those responsibilities where the minor's employment or work duty is in violation of the child labor law. It is beyond belief that the Legislature in particular or public policy in general would countenance a situation in which an insurance carrier, issuing a policy conforming to the statutory mandate, would nevertheless be permitted to exclude coverage in the case of a minor employed in violation of the Child Labor Law "with the knowledge or acquiescence of the insured or any executive officer thereof," and thus deprive a minor injured while so employed of an effective source of payment for the damages he may be awarded in a negligence action.
We conclude, therefore, that NJM is obligated under the policy here involved to defend Variety Farms in the minor's negligence action and to indemnify it against such sums as the insured might be legally obligated to pay as damages.

II
Turning, next, to the issue of the INA policy, we note the carrier's reliance upon a communication from the State Department of Insurance informing it that since the workers' compensation and employers' liability policy, as primary insurance, affords unlimited coverage, there is no need for further coverage under an excess policy. We agree, insofar as Variety Farms is concerned. The workers' compensation law requires complete coverage of all obligations incurred by an employer to his employee under that statute. As we explained in the preceding section, this would include the common law action for negligence which an injured employee, if a minor, is permitted to institute in lieu of statutory compensation benefits. Since INA's liability under its policy is limited to any excess over the "limit(s) of *23 liability indicated beside underlying policy(ies)," which includes the NJM policy, and since the latter affords unlimited coverage, Variety Farms clearly could not sustain an excess loss insofar as that lawsuit is concerned and, for that reason, would not have reason to invoke the INA policy. Consequently, INA would not be exposed to liability for any compensatory damages that might be recovered by the minor against Variety Farms. The trial judge was clearly wrong in holding otherwise.
The same conclusion, however, is not reached with respect to Bertino. He is not the employer named in the NJM policy, nor was there any requirement under the Workers' Compensation Law that Variety Farms take out insurance in his name. The corporation is the "employer" within the definition of N.J.S.A. 34:15-36. Bertino is merely the president of the corporation. But, as an "officer, executive, employee, director or stockholder of the Named Insured while acting on behalf of such Named Insured," Bertino is an additional insured under the INA policy. He is, moreover, also a named insured by virtue of an "Additional Declarations" endorsement attached to the policy.
The INA limit of liability, as it applies to Bertino, is stated in the "Additional Declarations" endorsement to be $1,000,000 "in excess of the retained limit as stated herein." The amount of the retained limit is $250. However, another endorsement, applicable to a "Named Insured named in the Additional Declarations," requires such insured to have in force as collectible insurance certain types of underlying policies including a comprehensive personal liability policy with a minimum coverage for bodily injury of $50,000 for each occurrence. In the event of the named insured's failure to comply with the foregoing, INA would be liable "only to the extent that it would have been liable had the Named Insured complied therewith."
Although the record does not disclose whether Bertino carried the required underlying insurance, it does not matter, since INA's exposure under its policy would be only with respect *24 to any amount over and above compensatory damages of $50,000 for which Bertino might be held personally liable to the injured minor in this case. But, in view of Bertino's potential liability, INA is obligated to him to defend the Sindoni lawsuit and to pay on his behalf such amount, if any, as would come within the coverage limit of its policy. To the extent that the judgment under review so provides, it is affirmed.

III
The judgment further declares, though without explanation or citation of supporting authority by the trial judge in his written opinion, that the INA policy also provides "excess coverage and the defense of Variety Farms, Inc. and John N. Bertino for punitive damages over and above the retained limit of such policy." INA argues that claims for punitive damages are not covered by its policy. It maintains that since such damages are meant to punish and not to compensate, insuring against them would contravene public policy. We agree.
In this State punitive or exemplary damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454 (1977). The underlying theory is to punish the offender for aggravated misconduct and to deter such conduct in the future. Ibid. Whether it is in the public interest to permit insurance coverage for punitive damages is a subject on which the courts throughout the country are in conflict. Some hold that insurance against liability for punitive damages would be invalid as against public policy; others take a contrary view. See 44 Am.Jur.2d, Insurance, § 1689 at 598 599; Annotation, "Liability insurance coverage as extending to liability for punitive or exemplary damages," 20 A.L.R.3d 343 (1968). We consider the *25 sounder rule to be that public policy does not permit a tortfeasor to shift the burden of punitive damages to his insurer. See Newark v. Hartford Acc. & Indem. Co., 134 N.J. Super. 537, 547 (App.Div. 1975); cf. LoRocco v. N.J. Mfrs. Ind. Ins. Co., 82 N.J. Super. 323, 332 (App.Div. 1964), certif. den. 42 N.J. 144 (1964). A person who is able to insure himself against punishment "gains a freedom inconsistent with the establishing of sanctions against such misconduct." Crull v. Greb, 382 S.W.2d 17, 23 (Mo. Ct. App. 1964). The court in Northwestern Nat'l Cas. Co. v. McNulty, 307 F.2d 432, 436 (5 Cir.1962), commenting on the applicable Florida law, which is similar to ours in this respect, said that the "characterization of punitive damages as a penalty, imposed as a means of punishing the defendant in order to deter him and others from anti-social conduct, and to no significant extent compensation, conforms with the most widely accepted basis for punitive damages in other American jurisdictions." The court added:
The policy considerations in a state where ... punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to any insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages have already made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. [at 440-441]
We are thoroughly in accord. See, also, American Surety Co. of New York v. Gold, 375 F.2d 523 (10 Cir.1966) (applying Kansas law); Universal Indem. Ins. Co. v. Tenery, 96 Colo. 10, 39 P.2d 776 (Sup.Ct. 1934); Tedesco v. Maryland Cas. Co., 127 Conn. 533, 18 A.2d 357 (Sup.Ct.Err. 1941), Nicholson v. American Fire & Cas. Ins. Co., 177 So.2d 52 (Fla.Ct.App. 1965); Esmond v. Liscio, 209 Pa.Super. 200, 224 A.2d 793 (Super.Ct. 1966); cf. Casperson v. *26 Webber, 298 Minn. 93, 213 N.W.2d 327 (Sup.Ct. 1973).[5] The case of Ambassador Insurance Company v. Montes, 76 N.J. 477 (1978), on which the Sindonis rely, is factually distinguishable and clearly inapposite.
Insofar as the judgment under review declares that the INA policy provides excess coverage for compensatory damages to plaintiff Variety Farms, Inc., and "excess coverage and the defense of Variety Farms, Inc. and John N. Bertino for punitive damages," with respect to the underlying negligence action, it is reversed. In all other respects, it is affirmed.
NOTES
[1] Other parties, joined as nominal defendants because of their inclusion in the negligence lawsuit but who are not directly concerned with the subject matter of this appeal, are Hammonton Blueberry Exchange, whose separate motion for summary judgment of dismissal was granted; Parkhurst Farm & Garden Supply, apparently the distributor of the power machinery involved in the mishap; and Ag-Pak, Inc., said to be the manufacturer of the machinery.
[2] "Retained limit" is defined in the policy as the greater of:

(1) an amount equal to the limit(s) of liability indicated beside underlying policy(ies) listed or insurance described in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured: or
(2) the amount indicated as the self insured retention in the Declarations as the result of any one occurrence not covered in whole or in part by the said policy(ies) of insurance.
The "retained limit" is discussed infra in greater detail.
[3] There is no issue here of an election in writing at the time of the hiring that the elective compensation section of the statute was not to apply. See N.J.S.A. 34:15-9.
[4] It is to be noted that the employer alone, and not the insurance carrier, is liable for the extra compensation. N.J.S.A. 34:15 10.
[5] Some jurisdictions reach a contrary result for a variety of reasons: insurance coverage which includes liability for punitive damages is not contrary to public policy, Price v. Hartford Accident & Indemnity Co., 108 Ariz. 485, 502 P.2d 522 (Sup.Ct. 1972); Abbie Uriguen Olds. Buick. Inc. v. United States F.I. Co., 95 Idaho 501, 511 P.2d 783 (Sup.Ct. 1973); Harrell v. Travelers Indem. Co., 279 Or. 199, 567 P.2d 1013 (Sup.Ct. 1977); Dairyland County Mut. Ins. Co. v. Wallgren, 477 S.W.2d 341 (Tex.Civ.App. 1972); policy language did not limit coverage to actual or compensatory damages, Scott v. Instant Parking, Inc., 105 Ill. App.2d 133, 245 N.E.2d 124 (Ct.App. 1969); Morell v. Lalonde, 45 R.I. 112, 120 A. 435 (Sup.Ct. 1923); Carroway v. Johnson, 245 S.C. 200, 139 S.E.2d 908 (Sup.Ct. 1965); coverage allowed unless injury was intentionally inflicted, General Cas. Co. v. Woodby, 238 F.2d 452 (6 Cir.1956) (applying Tennessee law); Southern Farm Bureau Cas. Ins. Co. v. Daniel, 246 Ark. 849, 440 S.W.2d 582 (Sup.Ct. 1969); Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639, 383 S.W.2d 1 (Sup.Ct. 1964); punitive damages covered as to master where wrongful act of employee was not by his direction, Ohio Cas. Ins. Co. v. Welfare Finance Co., 75 F.2d 58 (8 Cir.1934) (applying Missouri law), cert. den. 295 U.S. 734, 55 S.Ct. 645, 79 L.Ed. 1682 (1935); punitive damages recoverable in wrongful death action because of statutory language, Employer's Ins. Co. of Alabama v. Brock, 233 Ala. 551, 172 So. 671 (Sup.Ct. 1937); punitive damages within statutorily required insurance coverage, Maryland Cas. Co. v. Baker, 304 Ky. 296, 200 S.W.2d 757 (Ct.App. 1947); punitive damages included in policy insuring against liability for false arrest, Colson v. Lloyd's of London, 435 S.W.2d 42 (Mo. Ct. App. 1968).