713 A.2d 1014

LISA M. SCHMIDT, PLAINTIFF–RESPONDENT, v. DENNIS SMITH AND PERSONALIZED AUDIO VISUAL, INC., DEFENDANTS AND THIRD–PARTY PLAINTIFFS–RESPONDENTS, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, THIRD–PARTY DEFENDANT–APPELLANT.

Argued November 3, 1997—Decided June 15, 1998.

*Kevin E. Wolff*, argued the cause for appellant (*McElroy, Deutsch & Mulvaney*, attorneys; *Mr. Wolff* and *Mary Rose Migliazza*, on the briefs).

*Elizabeth Zuckerman*, argued the cause for respondent Lisa M. Schmidt (*Zuckerman & Fisher*, attorneys).

*John J. Bublewicz*, argued the cause for respondent Dennis Smith.

*Francis X. Garrity*, argued the cause for respondent Personalized Audio Visual, Inc. (*Garrity, Graham & Favetta*, attorneys).

*Jerome J. Graham, Jr.*, submitted a brief on behalf of *amicus curiae* New Jersey Manufacturers Insurance Company (*Graham, Curtin & Sheridan*, attorneys).

*Susan Stryker*, submitted a brief on behalf of *amicus curiae* American Insurance Association (*Sterns & Weinroth*, attorneys).

O'HERN, J.

The primary question in this appeal is whether insurance coverage exists under the employers liability section of a workers' compensation policy for claims of workplace sexual harassment when the harassment results in bodily injury. The specific question is whether the policy's exclusion of coverage for damages arising out of harassment (among other things) is effective to deny such coverage. We find that to the extent the exclusion would deny coverage for bodily injury caused by acts of sexual harassment in the workplace, the exclusion would prevent an employer from complying with *N.J.S.A.* 34:15–71, which requires employers to "make sufficient provision for the complete payment of any obligation [the employer] may incur to an injured employee." Accordingly, we affirm the judgment of the Appellate Division, which is reported at 294 *N.J.Super.* 569, 684 *A.2d* 66 (1996). In

*American Motorists Insurance Co. v. L–C–A Sales Co.*, 155 *N.J.* 29, 713 A.2d 1007 (1998), also decided today, we examine whether the "employee exclusion" of an employer's comprehensive general liability policy bars coverage of an employee's claim of age discrimination.

Lisa M. Schmidt filed a complaint in September 1991 against her employer, Personalized Audio Visual, Inc. (PAV) and Dennis Smith (Smith), the president of PAV. (Because of the similarity of the names (Schmidt and Smith), we shall refer to plaintiff as "Lisa.") PAV ran the business center at the Somerset Hilton Hotel. In her initial complaint, Lisa alleged that Smith committed hostile work environment sexual harassment in violation of New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, assault, battery, invasion of privacy and intentional infliction of emotional distress. She alleged that Smith demanded that she have sex with him, that he attempted to force "his tongue down her throat," and that he fondled Lisa's buttocks and breasts. Lisa alleged that these acts took place between January 2, 1991 and February 19, 1991, during and immediately prior to her employment by PAV. Two years later, in July 1993, Lisa filed an amended complaint that alleged for the first time that PAV and Smith were liable to Lisa under negligence theories, namely, that Smith had negligently inflicted emotional distress and that PAV had negligently failed to train or supervise her superior.

PAV and Smith (as an employee of PAV) demanded defense and indemnification in the lawsuit from United States Fidelity & Guaranty Company (USF&G), initially under a comprehensive general liability (CGL) policy and later under the employer's liability portion of a Workers' Compensation and Employers' Liability policy (Workers' Compensation policy). USF&G denied coverage under both policies. PAV and Smith instituted a third-party declaratory judgment action against USF&G on the coverage issue. The trial court accepted USF&G's argument that Lisa's case should be tried before the coverage action. The trial

court urged USF&G to participate in that trial, but USF&G declined to do so.

In the trial of Lisa's claims against PAV and Smith, the jury found Smith liable to Lisa for hostile work environment sexual harassment, assault, assault and battery, and intentional infliction of emotional distress. PAV was held liable for the hostile work environment sexual harassment alone. The jury was not asked whether PAV's liability was direct or vicarious, and it was not asked whether PAV could be vicariously liable for the intentional torts Smith had committed. The jury awarded compensatory damages of $80,000 to Lisa but did not allocate those damages to the different causes of action. The trial court entered judgment against PAV and Smith in the amount of $181,730.36, which included the compensatory damage award, $82,313.50 in counsel fees under LAD, and prejudgment interest and disbursements.

On cross-motions for summary judgment in the coverage actions, the trial court found that USF&G had a duty to defend Smith and PAV as well as a duty to indemnify PAV.

On appeal, the Appellate Division affirmed that part of the judgment that required USF&G to indemnify PAV for the full amount of Lisa's judgment and to reimburse PAV and Smith for all defense costs incurred by them. The Appellate Division agreed with USF&G that there was no duty to defend or indemnify PAV under the terms of the CGL policy. It held, however, that USF&G was obliged to defend and indemnify PAV under the employer's liability coverage of the Workers' Compensation policy. The court reasoned that the exclusion in that coverage for harassment was not applicable to sexual harassment claims when liability for those claims was imposed vicariously and not directly. It declined to apportion the defense costs as between Smith and PAV. We granted USF&G's petition for certification. 148 *N.J.* 461, 690 *A.*2d 608 (1997).

## I

Before considering the terms of the policy, we digress to review the nature of the insurance involved here. Under New

Jersey law, injuries that arise in and out of the course of employment are compensable through the system of Workers' Compensation laws. *N.J.S.A.* 34:15–1 to –142. Absent a specific election not to be covered, every employee is deemed to have elected the Workers' Compensation remedy for occupational injuries. *N.J.S.A.* 34:15–9. In exchange for this statutory remedy, the employee surrenders rights to sue the employer or fellow employees at common law except in cases where the injury stems from intentional wrongs committed by the employer or the fellow employees. *N.J.S.A.* 34:15–8. In order to assure that this statutory remedy given in lieu of a common law remedy is not illusory, the Legislature has required that every employer carry Workers' Compensation insurance. Those policies must cover not only claims for compensation prosecuted in the Workers' Compensation court, but also claims for work-related injuries asserted in a common law court. *N.J.S.A.* 34:15–72. Thus, in *Variety Farms, Inc. v. New Jersey Mfrs. Ins. Co.*, 172 *N.J.Super.* 10, 410 *A.*2d 696 (1980), the Appellate Division held that when a minor elected to seek a common law tort claim to recover compensation for injuries (workers under 18 years of age are exempt from the exclusivity provisions of the Workers' Compensation Act, *N.J.S.A.* 34:15–10), the employer's Workers' Compensation policy was required to provide coverage even though the policy contained a specific exclusion for employment that violated the law. (The plaintiff in that case was hurt while operating power-driven machinery. *N.J.S.A.* 34:2–21.17, a section of the Child Labor Law, prohibits the employment of minors under 16 to work with such machines.) In short, the terms of a policy issued pursuant to *N.J.S.A.* 34:15–78 cannot conflict with the statutory mandate that there be coverage provided for all occupational injuries.

Employers liability coverage, as the Appellate Division noted, "is traditionally written in conjunction with workers' compensation and is intended to serve as a 'gap-filler' providing protection to the employer in those situations where the employee has a right to bring a tort action despite provisions of the workers'

compensation statute." *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 *Cal.*3d 903, 226 *Cal.Rptr.* 558, 565, 718 *P.*2d 920, 927 (1986).

## II

The Appellate Division summarized the policy provisions and the exclusions relevant to this appeal.

The employers liability insurance here "applies to bodily injury by accident or bodily injury by disease," which arises "out of and in the course of the injured employee's employment" by the insured. Under the policy USF[ & ]G agreed to pay "all sums [PAV] legally must pay as damages because of bodily injury to [PAV's] employees, provided the bodily injury is covered by this Employers Liability Insurance." The pertinent exclusions to the policy are as follows:

C. Exclusions.

This insurance does not cover:

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

* * *

7. Damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law.

Exclusion C7 was amended and replaced with the following exclusion:

This insurance does not cover:

7. Damages arising out of coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions.

[294 *N.J.Super.* at 581, 684 *A.*2d 66 (footnote omitted).]

The Appellate Division concluded that although the language of Exclusion C7 applied to sexual harassment claims under LAD, the exclusion did not specifically exclude coverage for vicarious liability resulting from hostile workplace sexual harassment. The court resolved the ambiguity in favor of PAV and in line with PAV's reasonable expectations. *Id.* at 582, 684 *A.*2d 66. Given that PAV was legally obligated—under *Variety Farms, supra,* 172 *N.J.Super.* at 18, 410 *A.*2d 696—to provide for the complete payment of any obligation arising from an employee's injury, and given that the purpose of the employers liability section of the USF&G policy

was to bridge the gap between the typical workers' compensation obligations and the obligations arising from injuries not covered by the workers' compensation regime, the court held it was reasonable for PAV to expect coverage of its vicarious liability for Smith's conduct. *Id.* at 583, 684 *A.*2d 66.

We agree with the Appellate Division that Exclusion C5 does not apply because there is no evidence that PAV intended to harass Lisa. *Id.* at 584. We also agree with the Appellate Division that workers' compensation is not the exclusive remedy for victims of sexual harassment. *Id.* at 586. The employers liability section of the Workers' Compensation policy was therefore a proper place for PAV to look for coverage.

We are less able to agree with the Appellate Division's conclusion that Exclusion C7 is ambiguous than with its determination that an employer would reasonably expect the employer's liability section to provide coverage for the types of injuries Lisa suffered. The damages for which PAV is liable are damages "arising out of" harassment, in the language of that exclusion, and the phrasing of the exclusion is not "so confusing that the average policyholder cannot make out the boundaries of coverage." *Weedo v. Stone–E– Brick, Inc.,* 81 *N.J.* 233, 247, 405 *A.*2d 788 (1979). Were there no other ground requiring USF&G to indemnify PAV for its obligation to Lisa, Exclusion C7 might well have the effect USF&G urges.

USF&G must indemnify PAV, however, for the same reason that New Jersey Manufacturers Insurance Company had to indemnify Variety Farms for its obligations to the underage employee injured in that case. *Variety Farms, supra,* 172 *N.J.Super.* at 22, 410 *A.*2d 696. The Legislature, by way of *N.J.S.A.* 34:15–72, required PAV to obtain sufficient coverage for the payment of any obligation it might incur on account of bodily injuries to an employee. PAV thus contracted with USF&G for the coverage of bodily injuries falling both inside and outside of the workers' compensation structure. The employers liability section of the contract was to provide compensation for bodily

injuries to workers falling outside the workers' compensation system—injuries intentionally caused by fellow employees, for example, or injuries befalling a worker under the age of eighteen "by reason of the negligence of his or her master." *N.J.S.A.* 34:15–8 and –10. Exclusion C7 in the employers liability section disclaims coverage for a class of discomforts that one typically would not associate with bodily injury—criticism, demotion, evaluation, and defamation, for example—and that one typically would not expect to be covered by a scheme designed to insure that employees' bodily injuries be compensated. The exclusion is valid as long as the liability arising from those discomforts is not related to bodily injury. In this case, however, PAV's liability was primarily related to the personal injuries that Lisa suffered as a result of Smith's conduct. We have held that the type of injuries Lisa sustained—"emotional injuries accompanied by physical manifestations"—qualify as "bodily" for these purposes. *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 179, 607 *A.2d* 1255 (1992).[1] To the extent Exclusion C7 would otherwise operate to deny coverage for such injuries, the exclusion violates the public policy underlying the workers' compensation scheme and is therefore void. *Variety Farms, supra*, 172 *N.J.Super.* at 22, 410 *A.2d* 696.

---

[1] There is nothing in this record to suggest that any part of PAV's liability stemmed from non-bodily injuries. In its instruction to the jury, the trial court simply explained that in assessing damages, the jury should consider "1) disability and impairment, and 2) pain and suffering." The jury verdict form asked the jury for its assessment of "[d]amages, if any, awarded to Lisa Schmidt," without classifying her injuries in any way. It is highly unlikely that any portion of Lisa's $80,000 award was unrelated to her bodily injuries and would therefore not qualify as the kind of injury for which PAV was statutorily obligated to provide coverage. Because USF&G declined the trial court's invitation to participate in the liability trial, it may not now complain of any prejudice resulting from the jury's failure to distinguish between bodily and non-bodily injuries. *See Michaels v. Mutual Marine Office, Inc.*, 472 *F.Supp.* 26, 30–31 (S.D.N.Y.1979) (holding insurer liable for plaintiffs' counsel fees, despite plaintiffs' failure to obtain insurer's written consent before incurring those fees, when insurer had completely disavowed liability and refused to participate in the underlying arbitration proceeding).

We recognize that there are other insurance products that are specifically designed to indemnify employers against occupational claims arising from sexual harassment. *See* Nancy Ritter, *Employer Liability: The Rush Is On for Insurance, N.J. Lawyer,* Feb. 2, 1998, at 1 (discussing employment practices liability insurance). It is possible that the two forms of coverage may overlap in the instance when sexual harassment for which an employer is responsible results in bodily injury to a worker. The Commissioner of Banking and Insurance and the Commissioner of Labor (who has supervisory authority concerning the workers' compensation laws) may wish to work with the insurance industry to resolve or address this overlap.

We affirm the conclusions of the Appellate Division relating to USF&G's liability for the defense costs incurred by Smith and PAV. Although USF&G's duty to defend Smith did not arise until Lisa filed her amended complaint, USF&G was obligated to defend PAV from the beginning of the litigation. Her complaint stated a claim constituting a risk against which PAV had insured. *Danek v. Hommer,* 28 *N.J.Super.* 68, 77, 100 *A.*2d 198 (App.Div. 1953), *aff'd o.b.,* 15 *N.J.* 573, 105 *A.*2d 677 (1954). We acknowledge that there is no default rule requiring insurers to bear all defense costs when covered and non-covered costs cannot be apportioned with "scientific certainty." *SL Indus., Inc. v. American Motorists Ins. Co.,* 128 *N.J.* 188, 216, 607 *A.*2d 1266 (1992). But in this case PAV's defense strategy was identical to Smith's. Both parties denied the harassment ever occurred. PAV and Smith hired one lawyer to present their denials. The portion of the cost of defending Smith that was not included within the cost of PAV's defense would have been negligible. We therefore decline to remand for an apportionment of defense costs.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.