775 A.2d 562 (2001)
341 N.J. Super. 424
Marie CONRAD, Petitioner-Respondent,
v.
Nelia J. ROBBI, Trenton Board of Education, A.E.O Camp and Dorothy Katz, jointly, individually and in the alternative, Defendants-Appellants.
New Jersey Manufacturers Insurance Company and Nelia J. Robbi, Plaintiffs-Respondents/Cross-Appellants,
v.
Trenton Board Of Education, Defendant-Appellant/Cross-Respondent. and
Marie Conrad, Defendant/Third-Party Plaintiff-Respondent,
v.
Marsh & McLennan, Inc., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 2001.
Argued May 23, 2001.
Decided June 25, 2001.
*565 W. John Weir, II, Newtown, PA,on behalf of appellant Nelia J. Robbi in A-2247-99T5; William F. Hartigan, Jr., Trenton, on behalf of Ms. Robbi as cross-appellant in A-2619-99T5, and A-6752-99T5 (McLaughlin & Cooper, attorneys; James J. McLaughlin, Trenton, of counsel and on the brief; Mr. Hartigan, on the brief for Robbi on the cross-appeal).
John Peter Duggan, Harrisburg, for appellant Trenton Board of Education in A-2619-99T5 (Wolff, Helies, Duggan, Spaeth & Lucas, Red Bank, attorneys; Mr. Duggan, of counsel; John T. Bazzurro on the brief).
John J. Marquess, Turnersville, for appellant/cross-respondent/defendant Trenton Board of Education in A-6752-99T5 (Mr. Marquess on the brief).
Edward Slaughter, Jr., Charlottesville, VA, for respondent Marie Conrad (Pellettieri, Rabstein & Altman, Mount Holly, attorneys; Mr. Slaughter, of counsel; Sherri L. Warfel on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD. *563
*564 The opinion of the court was delivered by KEEFE, P.J.A.D.
The issues in these three appeals arise from an automobile accident that occurred on July 8, 1992. Although argued on different dates, we now consolidate the appeals for the purpose of this opinion.
The essential facts are undisputed. The automobile accident in question involved only one automobile, driven by defendant Nelia J. Robbi and insured by New Jersey Manufacturers Insurance Company (NJM). Plaintiff Marie Conrad was a passenger in the Robbi automobile. Robbi lost control of her vehicle. As a result, the vehicle crossed over the opposing lane of traffic, left the roadway and entered a field where it came to a stop when the left front quarter panel slammed into a tree. At the time of the accident Conrad was sixteen years old and Robbi was eighteen.
Conrad was seriously injured. As a result, she instituted suit against Robbi, the Trenton Board of Education (the Board), A.E.O. Camp and Dorothy Katz (the Conrad matter). Discovery revealed that during the summer of 1992, Conrad and Robbi were both employed as counselors at a summer camp program, commonly known as the Reading and Recreation Program (Program) for underprivileged elementary school students from Trenton. The Program was directly operated by the Hopewell Valley Association for Equal Opportunities, Inc. (A.E.O.Camp). Defendant Dorothy Katz, who volunteers her time, is *566 a member of A.E.O.'s Board and the Director of the Program. Both Conrad and Robbi were paid employees of the Program which derived its funds from private donations.
Katz obtained insurance coverage for the Program by writing a letter to the Board each summer requesting its sponsorship of the Program. In a letter dated June 17, 1992, Katz wrote Thomas Morgan, Trenton's Assistant Superintendent for Business Administration, informing him that:
The Reading and Recreation Program for Trenton children is applying for the sponsorship of the Board of Education of Trenton. This sponsorship includes coverage for workers liability insurance, compensation insurance, umbrella insurance and permission to participate in the Summer Foods Program, which has been granted for many consecutive years.
The Reading and Recreation Program buses 120 Children to Hopewell each weekday for five weeks. They are divided into small groups which rotate between teachers of reading, music, drama, arts, crafts, swimming. Counselors lead them in sports and games. The money for this program is raised privately. The program is free to the children. Counselors and teachers are chosen from Trenton, Princeton, and Pennington.
The Board approved the sponsorship of the Program at its meeting on June 25, 1992.
Thereafter, Marsh & McLennan, Inc., the Board's insurance broker, issued two certificates of insurance to the Program. The certificates stated that the Trenton Board of Education was covered by the New Jersey School Boards Association Insurance Group. One certificate was for the Pennington Presbyterian Church and the other was for Hopewell Elementary School. Both forms had places for automobile liability endorsements. However, both were left blank. In any event, both certificates stated that "[t]he captioned policies include coverage for the Summer Reading and Recreation Program sponsored by the Trenton Board of Education from 6/29/92 thru 7/31/92." Katz stated at her deposition that she believed that the insurance provided by the Board covered all injuries that might have been sustained by campers or staff.
The morning session of the Program was held at Hopewell Elementary School, and the afternoon session was held at the Pennington School. The Program provided school buses to transport the campers between the two facilities. However, the counselors were not provided transportation, and, therefore, were responsible for getting themselves from Hopewell Elementary School to the Pennington School.
With this background in mind, it is appropriate to discuss the pretrial determinations that were made with respect to certain legal issues. Robbi moved for dismissal of Conrad's complaint against her on the ground that it was barred by the fellow-servant rule, N.J.S.A. 34:15-10. In denying Robbi's motion, the motion judge found that Conrad and Robbi were co-employees on the date of the accident and that the accident arose out of and in the course of their employment. Relying on Thompson v. Family Godfather, Inc., 212 N.J.Super. 270, 514 A.2d 875 (Law Div. 1986), the judge found that the fellow-servant defense does not apply where, as here, the injured employee is under the age of eighteen and elects to sue in the Superior Court rather than in the Division of Workers' Compensation. At the same time, the motion judge denied the Board's motion for summary judgment on the ground that there were genuine issues of *567 fact as to who employed Conrad and Robbi.
While the Conrad matter was awaiting trial, NJM instituted a declaratory judgment action against Conrad and the Board. The action sought, among other things, to have the Board declared responsible for Robbi's representation and provide indemnification for any judgment entered against her. Conrad instituted a third party action against Marsh & McLennan, claiming that it had a duty to provide automobile insurance coverage for the subject accident and failed to do so.
Relying on Variety Farms, Inc. v. New Jersey Manufacturers Ins. Co., 172 N.J.Super. 10, 410 A.2d 696 (App.Div. 1980), the same motion judge found that since Conrad and Robbi were acting within the scope of their employment when the accident occurred, workers' compensation insurance, rather than automobile insurance, would apply. Accordingly, based on the Board's agreement with the A.E.O. Camp to provide insurance for the Program, the judge required the Board to defend and indemnify Robbi in the Conrad matter. The question of which entity was Robbi's employer, the Board or the A.E.O. Camp, was left undecided.
Thereafter, the Conrad matter proceeded to trial before another judge. Robbi's negligence was not seriously disputed. Because one of the issues on appeal is whether the verdict rendered for Conrad was excessive, we summarize the testimony on that issue in some detail.
Conrad was transported by ambulance to the Princeton Medical Center. She was treated at the hospital by Dr. Robert Dunn, M.D., an orthopedic surgeon. Dr. Dunn's testimony was offered at trial through a de bene esse deposition. He recalled that when he first examined Conrad several hours after the accident "she had a great deal of tenderness in her low back area ... at the upper end of the lumbar spine. She also had black and blue marks, abrasions over both knees in the upper lower leg area, the upper tibia, which is just below the knees, and she was tender in both knees." After conducting a number of diagnostic tests, Dr. Dunn concluded that Conrad sustained a compression fracture. He explained "[i]n other words, the front of the vertebra had squashed down and one piece of that had what's called retropulsed or gone back into the spinal canal."
As a result, Dr. Dunn performed surgery the next day to repair Conrad's back. The surgery entailed the fusing of Conrad's spine from vertebra T9 to vertebra L3. Dr. Dunn had to remove a section of bone from Conrad's pelvis and place it in her back in order to fuse the broken vertebra to the vertebra on either side of it. In addition, the surgery required the insertion of metal Harrington rods into her back to support the fusion process.
As a result of the surgery, Conrad was left with two scars, one on her back and one on her pelvis. Dr. Dunn explained that Conrad's scars were permanent, however, the color of the scars would fade over time. Conrad remarked at trial that "both scars are still very sensitive to touch. I tried to apply creams so that they might fade, but it doesn't really work. I'm aware of them." Conrad added, "I still will not wear a two piece bathing suit. Probably never will ... I don't wear backless dresses, backless shirts, halters, anything of that nature. Anything that would expose it."
After surgery Conrad was required to wear a hard plastic body brace twenty-four hours a day for three months to prevent her from moving her back and hindering the healing process. When the hard body brace was removed, Conrad had to wear a *568 soft body brace for two additional months, which she was only allowed to remove for bathing.
Dr. Dunn testified that after the back brace was removed he prescribed physical therapy, which Conrad attended three times a week for nearly five months. After the formal physical therapy sessions ended, Dr. Dunn prescribed a number of home exercises for Conrad to do in order to further strengthen her back.
Dr. Dunn testified that Conrad returned to his care in 1998, after she hurt her lower back while attempting to work out with a personal trainer to strengthen her back. Dr. Dunn explained that Conrad's complaint of pain in the lower lumbar area of her back was likely caused by the extra strain placed on the rest of her back due to the fusion in the mid section.
At trial, Conrad testified that since the accident she has had a number of lingering problems, including difficulty swimming, dancing and running. She added that she tires easily, and is often unable to sit down for a long period of time without feeling pain. On cross-examination Conrad conceded that she graduated from high school on time and started college the following fall. Conrad's mother testified that since the accident her daughter has become an extremely nervous person and rarely allows other people to drive when she is in the car.
Dr. Dunn offered his opinion that Conrad's injuries were permanent. He explained:
The basis of the opinion is that the scarring is permanent and as I stated earlier in my testimony, we've taken a bad situation and made it better. We didn't make it the way it was prior to her accident. She walks, she functions, but she still has a spine which is not a normal spine; doesn't flex and extend the way a normal spine does, has real increase in load on the lower end of her spine where she's not fused because all the normal motion is now going through those lower flexible segments because the segment above is really rigid at this point. So she's going to have symptoms and going to have symptoms in the future. She's had some now and she's been able to control those with exercises for the most part. How much she's able to do that as she gets older remains to be seen.
When asked about his prognosis for future back problems, Dr. Dunn explained:
The prognosis is as she gets older with the increased wear and strain on the lower remaining supple vertebra, she's gong to wear those disks out at a much more rapid rate than she otherwise would, and that's going to be a problem because normally you wear a disk out you can say, well, you can fuse the area, you can do a bunch of things. But you can't fuseit would be a very bad decision to do more surgery on her below that because then she'd have the entire spine being stiff as a ramrod and really wouldn't be able to bend or function. And so that's an unsolvable problem.
Robbi's attorney objected to this latter statement as being beyond the scope of the Doctor's report. The trial judge overruled the objection and allowed the jury to consider this information.
The jury awarded Conrad $750,000. However, the total judgment was in the amount of $962,866.44, after the trial judge added prejudgment interest. The trial judge denied the Board's motion for a new trial on damages or, in the alternative, a remittitur.
Subsequent to the jury verdict, the judge who decided the pretrial motions entered orders dismissing all claims against Marsh & McLennan; granting the *569 summary judgment brought by Dorothy Katz; granting the summary judgment brought by Conrad for a declaration that Conrad and Robbi were employees of the A.E.O. Camp and the accident arose out of and in the course of their employment; and, finally, granting Conrad's motion that any judgment or settlement entered into in favor of Conrad and against Robbi would be paid and satisfied by the Board, through its insurance carrier, if any, or its self-insured fund.
Robbi filed the first appeal, contending through NJM, that the motion judge erred in concluding that a minor, co-employee is not barred from suing a fellow-servant for injuries arising out of and in the course of the employment. The Board appealed, contending that the trial judge in the Conrad matter erred by allowing plaintiff's medical expert to testify contrary to the contents of his report and office notes, and that it also erred in denying the Board's motion for a new trial or, in the alternative, a remittitur. Finally, through separate counsel, the Board appealed from the judgment entered against it in the declaratory judgment action, claiming, among other things, that the motion judge erred in holding that the Conrad matter was essentially a workers' compensation proceeding, rather than a tort case, and in holding that the Board's insurance was primary. The Board also raises on appeal, for the first time, that the judgment entered in the declaratory judgment matter is invalid because the Board's insurance carrier was not joined as an indispensable party.
For the reasons that follow, we hold that the fellow-servant doctrine does not provide a defense to Robbi where a co-employee exercises the statutory option to sue in the Superior Court; the trial judge did not err in admitting Dr. Dunn's testimony; and the verdict entered by the jury was not against the weight of the evidence. We also hold that the employer is the responsible party to satisfy an injured worker's claim, irrespective of the forum in which it is brought and irrespective of the fact that the employee was injured in a co-employee's automobile. Finally, we hold that the judgment entered against the Board, rather than the A.E.O. Camp, was appropriate in that the Board had stipulated that it did not matter who Conrad's employer was for the purpose of this appeal.

I.
We first address the issue of whether the motion judge erred in finding that Conrad's claim against Robbi was not barred by fellow-servant doctrine which is codified at N.J.S.A. 34:15-8. Ordinarily, the Workers' Compensation Act provides the exclusive remedy for an employee who sustains an injury in an accident that arises out of and in the course of the employment. Danek v. Hommer, 9 N.J. 56, 62, 87 A.2d 5 (1952). Indeed, N.J.S.A. 34:15-8 provides that:
Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy.
In 1961, the same section of the statute that provided for an injured employee's exclusive remedy to be under the Act was amended to provide immunity for co-employees from actions at common law by injured co-employees. The amendment, *570 commonly referred to as the fellow-servant rule, provided:
If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

[N.J.S.A. 34:15-8]
The purpose of the amendment was not so much to protect the fellow-servant from liability as it was to protect the employer from paying twice, once through compensation and a second time through indemnification of the fellow-servant against the injured employee's judgment. Miller v. Muscarelle, 67 N.J.Super. 305, 321, 170 A.2d 437 (App.Div.), certif. denied, 36 N.J. 140, 174 A.2d 925 (1961). In Miller, we explained:
The continued subsistence of a cause of action in tort against a fellow-employee has come under considerable public criticism in recent years. It has frequently resulted in burdening the employer indirectly with common-law damages superimposed upon his workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify the sued director, officer or supervisory employee, or with the expense of carrying insurance to cover the personal liability of such supervisory personnel. See statement appended to Assembly Bill No. 117 (1960); see also, Hagen v. Koerner, 64 N.J.Super. 580, 166 A.2d 784 (App.Div.1960). Recognizing that such consequences conflict with the general scheme of the Workmen's Compensation Act, the Legislature this year amended the act (R.S. 34:15-8) expressly to preclude a right of recovery on account of a compensable injury or death at common law or otherwise against a fellow-employee except in cases of intentional wrong. L. 1961, c. 2.

[Ibid.]
It stands to reason, therefore, that the rationale for fellow-servant immunity vanishes if the employee is also permitted to sue the employer at common law. In such cases, there is no risk of double payment by the employer. As our Supreme Court recently noted:
The Legislature clearly chose only two categories of workers to whom it would extend an election of whether to file a common-law tort action or a claim for benefits under the Act. N.J.S.A. 34:15-10 provides an election to children under the age of eighteen. That section also provides that injured employees: (1) under the age of eighteen without proper employment certificates; or (2) employed in violation of our child laws may elect to pursue workers' compensation benefits in the Division that are double the normal benefits or may file a common law negligence action in the Superior Court against the employer and fellow worker.

[Kristiansen v. Morgan, 158 N.J. 681, 682, 730 A.2d 1289 (1999) (emphasis added) (Citations and remainder of paragraph omitted).]
The quoted passage is from an order that corrected grammatical mistakes in the Court's original opinion.[1] In the original opinion, Thompson, supra, 212 N.J.Super. at 276, 514 A.2d 875, the case upon which the motion judge relied to deny Robbi's motion for summary judgment, was cited as authority for the Court's statement that an employee under the age of eighteen who either is employed without proper employment certificates, or who is employed *571 in violation of the child labor laws, may elect to sue at common law "against the employer and a fellow worker." Kristiansen, supra, 153 N.J. at 312, 708 A.2d 1173 (emphasis added).
In Thompson, a thirteen year old boy was injured while operating a power-driven dough machine. 212 N.J.Super. at 271, 514 A.2d 875. The complaint was filed pursuant to the election of remedies provision of the statute. It named two of the boy's co-workers, who also happened to be the sole shareholders and officers of the employer corporation. Ibid. The Law Division judge held that the suit against the co-employees was not barred by N.J.S.A. 34:15-8. The court reasoned:
This court concludes from the above authority that where workers' compensation benefits are the employee's sole remedy, the employer was intended to be immunized by N.J.S.A. 34:15-10 ... Knowing the law permits a minor to elect a common law remedy, the employer who employs minors is put on notice to carry insurance protection to cover the personal liability of supervisory personnel, to cover itself for any cross claims for indemnity should an employee be sued for other than an intentional tort and to provide insurance protection for itself for liability based on the doctrine of respondeat superior in a situation where a minor is injured on the job as a result of the negligence or other tortious act of a co-employee.
[Thompson, supra, 212 N.J.Super. at 274, 514 A.2d 875.]
None of the parties have cited Kristiansen, although the Supreme Court in that case clearly endorsed the holding in Thompson. In light of the Supreme Court's recognition of Thompson as authoritative, we are not free to explore the issue further.

II.
The Board argues on appeal that the trial judge committed error in allowing Conrad's expert witness, Dr. Dunn, to testify "that the plaintiff's prognosis was less than promising and that she may require surgery in the future despite the fact that his report listed her prognosis as `generally good.'" The Board asserts that this testimony was a surprise and resulted in prejudice to the Board, thereby causing the jury to award an excessive verdict. As a result, the Board seeks a remand for a new trial, or, in the alternative, a remittitur.
Dr. Dunn's challenged testimony concerns his prognosis for the further deterioration of Conrad's back. Specifically he testified:
The prognosis is as she gets older with the increased wear and strain on the lower remaining supple vertebra, she's gong to wear those disks out at a much more rapid rate than she otherwise would, and that's going to be a problem because normally you wear a disk out you can say, well, you can fuse the area, you can do a bunch of things. But you can't fuseit would be a very big decision to do more surgery on her below that because then she'd have the entire spine being stiff as a ramrod and really wouldn't be able to bend or function. And so that's an unsolvable problem.
While we agree with the Board that Dr. Dunn's prognosis was less than promising, we disagree that he suggested future surgery. It appears to us that Dr. Dunn would recommend against surgery because then "the entire spine would be stiff as a ramrod[.]"
Expert testimony that deviates from the pretrial expert report may be excluded if the court finds "the presence of surprise and prejudice to the objecting party." Velazquez ex rel. Velazquez v. *572 Portadin, 321 N.J.Super. 558, 576, 729 A.2d 1041 (App.Div.1999), rev'd on other grounds, 163 N.J. 677, 751 A.2d 102 (2000). In New Jersey, "[i]t is well settled that a trial judge has the discretion to preclude expert testimony on a subject not covered in the written reports furnished in discovery." Ratner v. General Motors Corp., 241 N.J.Super. 197, 202, 574 A.2d 541 (App.Div.1990). As a result, an abuse of discretion standard of review is utilized in appellate oversight of a trial judge's decision to allow or to exclude such testimony. Velazquez, supra, 321 N.J.Super. at 576, 729 A.2d 1041. In Westphal v. Guarino, we identified a number of factors for a Law Division judge to consider in exercising his or her discretion. 163 N.J.Super. 139, 146, 394 A.2d 377 (App.Div.), aff'd, 78 N.J. 308, 394 A.2d 354 (1978). The factors which would strongly urge the trial judge, in the exercise of discretion, to suspend the imposition of sanctions, are (1) the absence of a design to mislead, (2) absence of the element of surprise if the evidence is admitted, and (3) absence of prejudice which would result from the admission of evidence. Ibid.
Importantly, "[w]hile a trial judge has wide discretion in deciding the appropriate sanctions for a breach of discovery rules, the sanction must be just and reasonable." R. 4:23; Mauro v. Owens-Corning Fiberglas Corp., 225 N.J.Super. 196, 206, 542 A.2d 16 (App.Div.1988), aff'd, 116 N.J. 126, 561 A.2d 257 (1989). A party cannot claim to be surprised by expert testimony, when it contains "the logical predicates for and conclusions from statements made in the report." Velazquez, supra, 321 N.J.Super. at 576, 729 A.2d 1041. Limiting an expert "to a statement of bare conclusion without giving the expert a chance to explain his or her reasons in detail is not fair or reasonable." Ibid.
Dr. Dunn's first pretrial report dated September 22, 1993, stated that "the prognosis is generally good, although the patient does have a fused spine decreasing her motion to some extent and an obvious scar across her back." His second report, however, stated:
At this time, I think that Marie has reached her maximum medical improvement. She will most likely continue to have intermittent symptoms with her back and symptoms such as those described above. In general, she has had a fairly good result from a rather severe and nasty accident. However, I have told her that while her result is good, I am unable to give her the same back that she had prior to her accident and this is a fact that she must learn to live with.
The complaints referred to by Dr. Dunn in his report, as related by Conrad to him during the examination that prompted the report, were that her posture was affected by the fusion and rodding, that the condition appeared to be getting worse, that she feels strain on her neck and "knots" in her shoulders. Conrad also complained that, despite her efforts to strengthen the affected muscles, the "symptoms persist."
In addition to the two reports, the Board had copies of Dr. Dunn's office notes. Two entries are relevant to this inquiry. On June 26, 1998, Dr. Dunn recorded that Conrad was "having low back spasm secondary to increased pressure and mechanical low back dysfunction secondary to her fusion above." He recommended a rehabilitation program. On Conrad's last visit, August 13, 1998, Dr. Dunn recorded that Conrad felt better due to the rehabilitation program but was "still having some back problems." He told her "this may be a continuing problem because of her fusion and the fact this puts uneven loads on her back."
*573 Notably, Conrad was examined by a defense physician. Her complaints to the examining physician were not unlike those contained in Dr. Dunn's records. The examining physician concluded that Conrad's complaints were "consistent with her diagnosis and these will be permanent in nature." There is no indication in the record that the defense would have been unable to meet Dr. Dunn's allegedly startling testimony through the examining physician.
Under the circumstances, we find no abuse of discretion in the trial judge's decision to permit Dr. Dunn's testimony. The Board was clearly on notice that Conrad had a permanent injury with progressive symptoms. The defense examining physician also opined that plaintiff's symptoms were consistent with her injury and are likely to be permanent. As a result, the Board was on notice of the fact that Dr. Dunn was likely to testify about future back problems. The trial testimony was at the very least the logical predicate of the pretrial reports.
The Board also contends that the trial judge erred in failing to grant a new trial, or, in the alternative, a remittitur on the ground that the verdict was excessive and against the weight of the evidence.
A trial judge may properly grant a motion for a new trial because the verdict is against the weight of the evidence. Dolson v. Anastasia, 55 N.J. 2, 6, 258 A.2d 706 (1969). The object of the trial judge's review, however, "is to correct clear error or mistake by the jury." Ibid. In doing so the court must study the record carefully to determine whether reasonable minds might accept the evidence as a basis to support the jury verdict. Ibid. The trial judge is not a thirteenth supreme juror. Ibid. "The judge may not substitute his judgment for that of the jury merely because he would have reached an opposite conclusion." Ibid. "A trial judge should thus not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injuries and resulting disabilities shown as to shock his conscience and to convince him that to sustain the award would be manifestly unjust." Dombroski v. Atlantic City, 308 N.J.Super. 459, 467, 706 A.2d 242 (App. Div.1998).
The standard of review for appellate courts is largely the same as for trial courts. The Supreme Court explained:
We say the test is `essentially the same' because where certain aspects are importantwitness credibility, `demeanor,' `feel of the case,' or other criteria which are not transmitted by the written record, the appellate court must give deference to the views of the trial judge thereon. His decision, however, is not entitled to any special deference where it rests upon a determination as to worth, plausibility, consistency or other tangible considerations apparent from the face of the record with respect to which he is no more peculiarly situated to decide than the appellate court.
[Dolson, supra, 55 N.J. at 7, 258 A.2d 706.]
Therefore, we will only set aside a verdict as excessive in the clearest cases. Spragg v. Shore Care, 293 N.J.Super. 33, 63, 679 A.2d 685 (App.Div.1996). "The court should consider the evidence in the light most favorable to the injured party." Ibid. If the court decides that reasonable minds may conclude that adequate evidence was presented to support the verdict, it should be affirmed. Budd v. Erie Lackawanna R.R. Co., 98 N.J.Super. 47, 58, 236 A.2d 143 (App.Div.1967), certif. denied, 51 N.J. 186, 238 A.2d 472 (1968). It makes no difference that the particular panel of appellate judges would have decided the issue differently. Ibid.
*574 We have applied these principles to our careful review of the record and conclude that there is no warrant for our intervention. Conrad sustained serious permanent injuries to her back that have caused her great discomfort and disability. Further, a jury could well find that Conrad's condition will progressively worsen as she ages. We do not find the award manifestly excessive under the circumstances.

III.
We now turn to the Board's appeal from the judgment entered in the action brought by NJM. On appeal the Board asserts that this is simply a tort claim for negligent driving and the motion judge erred in concluding that it was a workers' compensation claim. The Board further asserts that the trial court erred in finding that its workers' compensation policy covered the loss to the exclusion of Robbi's automobile insurance; the trial court committed plain error by failing to join the workers' compensation carrier as a party; and it erred in failing to consider the language of the Robbi's automobile insurance policy, which was never entered into evidence.
It is important to note at the outset that at oral argument before us the Board stipulated that it is irrelevant for the purpose of this appeal who Conrad's employer actually was. That is so, obviously, because the Board is the real party in interest, having agreed to provide the necessary insurance to cover the A.E.O. Camp for liability and workers' compensation. It was further stipulated that Conrad's accident arose out of and in the course of her employment. Nonetheless, the Board contends that the trial judge erred in holding that its workers' compensation insurance was responsible to cover Conrad's verdict to the exclusion of Robbi's personal automobile insurance policy issued by NJM.
Another Part of this court decided an issue stemming from these same underlying facts that informs our decision to some extent. Chubb Group v. Trenton Board of Education, 304 N.J.Super. 10, 697 A.2d 952 (App.Div.), certif. denied, 152 N.J. 188, 704 A.2d 18 (1997). Chubb Group, the automobile insurer for the Conrad family, paid Conrad's medical bills under its PIP endorsement when the Board refused payment. The Board had declined to pay Conrad's bills because Conrad had chosen to exercise her statutory right to pursue a common law action for personal injuries. Id. at 13, 697 A.2d 952. Chubb filed a petition in the Division of Workers' Compensation seeking reimbursement for the PIP payments. The Workers' Compensation judge dismissed the petition on the ground that Conrad had essentially elected her remedy in the Superior Court and, as such "`there isn't any possible workers' compensation action that can be brought.'" Id. at 14, 697 A.2d 952. Noting that a PIP carrier has a statutory right of reimbursement where its insured has sustained injuries in an auto accident that arises out of and in the course of employment, even where the employee elects not to file a compensation claim, the court said: "the derivative nature of Chubb's entitlement to reimbursement depends on whether the minors' injuries are compensable, not on their selection of a forum." Id. at 17, 697 A.2d 952. The court also observed a principle that we find definitive in terms of allocating ultimate responsibility for work connected injuries irrespective of the forum.
We should also not lose sight of the fact that this case involves employment-related injuries for which the employer or the workers' compensation carrier ordinarily bears the full cost of the workers' injuries. Leaving the burden of paying *575 the medical expenses of the injured minor worker on the employer serves as an incentive for safety in respect of the employer who decides to hire minors as part of its workforce.
[Id. at 19, 697 A.2d 952 (citation omitted).]
The subject case points out the interrelated nature of cases brought by minor workers in the Superior Court for injuries that arise out of their employment and proceedings in the Division of Workers' Compensation. Irrespective of where the action is brought, the employer or its insurer is ultimately responsible for the worker's injury.
The obligation of an employer to pay all claims for injuries arising out of the employment is all encompassing. For that reason, the Legislature has required every employer to carry workers' compensation insurance. As our Supreme Court recently recognized, "[t]hose policies must cover not only claims for compensation prosecuted in the Workers' Compensation court, but also claims for work-related injuries asserted in a common law court." Schmidt v. Smith, 155 N.J. 44, 49, 713 A.2d 1014 (1998). Thus, in Variety Farms, supra, 172 N.J.Super. at 10, 410 A.2d 696, an employee who was the age of eighteen when injured while operating power-driven equipment, a violation of the Child Labor Law, N.J.S.A. 34:2-21.17, and elected to sue at common law. We held that, irrespective of where the suit was brought, the employer's workers' compensation policy was required to cover claims for injuries arising out of and in the course of employment. We further held that an insurer cannot provide a workers' compensation insurance policy that excludes in any way claims that are otherwise compensable under the Workers' Compensation Act. Accordingly, the insurer was not permitted to exclude claims by injured employees that resulted from the employer's violation of the Child Labor laws.
Further, in Schmidt, supra, the Court held that an employer who was sued under the Law Against Discrimination for bodily injuries sustained as a result of sexual harassment in the workplace was entitled to be covered by the insurer who provided workers' compensation insurance to the employer. 155 N.J. at 49, 713 A.2d 1014. Employers' liability coverage, which insures against work related injuries that are brought outside of the Division of Workers' Compensation, is available to the employer as a part of a workers' compensation policy. Such coverage is specifically designed to provide "`protection to the employer in those situations where the employee has a right to bring a tort action despite provisions of the workers' compensation statute.'" Id. at 49-50, 713 A.2d 1014 (quoting, Producers Dairy Delivery Co. v. Sentry Ins. Co., 41 Cal. 3d 903, 226 Cal.Rptr. 558, 718 P.2d 920, 927 (1986)). Any effort to exclude coverage for work related injury claims resulting in bodily injury would be a violation of N.J.S.A. 34:15-72. Schmidt, supra, 155 N.J. at 51-52, 713 A.2d 1014.
The Board cannot escape its responsibility to compensate an injured employee by pointing to the existence of other insurance that may also cover the claim. As Chubb Group, supra, made clear, an auto insurer may be required to pay prompt compensation to those who are injured while occupying an automobile, but, to the extent that the injury is work related, the ultimate responsibility is with the employer. Bellafronte v. General Motors Corp., 151 N.J.Super. 377, 376 A.2d 1294 (App.Div.), certif. denied, 75 N.J. 533, 384 A.2d 513 (1977), upon which the Board relies to argue that the primary responsibility is on the automobile insurer, is not on point since it did not arise out of dispute *576 between an employer's workers' compensation insurer and an automobile insurer.
We decline to address the Board's alternative argument, raised for the first time on appeal, that the NJM policy provides excess insurance coverage for Conrad's injuries. It is well established that an appellate court will not decide an issue that was not brought before the trial court, unless the issue goes to the jurisdiction of the trial court or involves an issue of public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). The Board's argument fits neither of the exceptions. Likewise, we decline to address the merits of the Board's claim that the judgment under review is void because of the failure to join an indispensable party, the Board's insurer. The issue was not raised in the trial court. Ibid. In any event, R. 4:6-3 requires that a motion for joinder of an indispensable party "shall be heard and determined before trial on application of any party, unless the court for good cause orders that the hearing and determination thereof be deferred until after the trial." The Board, better than anyone, knew of the importance of joining its insurer if it purchased compensation insurance for the A.E.O. Camp, as it had promised Mrs. Katz. To suggest that the burden was on someone else is meritless.
The judgments under review are affirmed.
NOTES
[1] We have omitted the crossed out words from the quoted passage.