**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2074-23

MARGARETE HYER,

     Plaintiff-Appellant,

v.

VILLAGE OF RIDGEWOOD
BOARD OF EDUCATION, DR.
DANIEL FISHBEIN,[1] ANGELO
DESIMONE, ANTHONY S.
ORSINI, GREG WU, STEVEN
TICHENOR, SODEXO, a/k/a
SODEXO USA, and/or SODEXO,
INC., GCA SERVICES GROUP
INC., a/k/a GCA EDUCATION
SERVICES INC., ARAMARK,
a/k/a ARAMARK SCHOOLS
FACILITIES, LLC, ARAMARK
SCHOOLS, INC., ARAMARK
EDUCATIONAL GROUP, LLC,
ARAMARK EDUCATIONAL
SERVICES, LLC, and/or
ARAMARK EDUCATIONAL
GROUP, INC.,

     Defendants-Respondents.

_____

---

[1] Improperly plead as Daniel Fishbien.

Argued September 10, 2025 – Decided September 29, 2025

Before Judges Mayer, Gummer, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4141-20.

Scott Piekarsky argued the cause for appellant (Offit Kurman PA, attorneys; Scott Piekarsky, on the briefs).

Gina M. Zippilli-Matero argued the cause for respondent Village of Ridgewood Board of Education as to the dismissal of Counts One and Five (Capehart & Scatchard, PC, attorneys; Gina M. Zippilli-Matero, of counsel and on the brief).

Patrick W. Brophy argued the cause for respondent Aramark Management Services Limited Partnership (McMahon, Martine & Gallagher, LLP, attorneys; Patrick W. Brophy, on the brief).[2]

Ruby Kumar-Thompson argued the cause for respondent Village of Ridgewood Board of Education as to Counts Two, Three and Four, and respondents Angelo DeSimone, Gregory Wu, Anthony Orsino, Dr. Daniel Fishbein and Steven Tichenor as to Counts One and Five (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Ruby Kumar-Thompson, of counsel and on the brief).

---

[2] Plaintiff named the following Aramark entities as defendants: Aramark a/k/a Aramark Schools Facilities, LLC; Aramark Schools, Inc.; Aramark Educational Group, LLC; Aramark Educational Services, Inc.; and Aramark Educational Services, LLC. Aramark Management Services Limited Partnership filed an answer, indicating plaintiff had incorrectly sued it as those entities. For ease of reading, we refer to the Aramark defendants as Aramark.

Kerry L. Jones argued the cause for respondent Sodexo (Goldberg Segalla LLP, attorneys; Kerry L. Jones, of counsel and on the brief).

PER CURIAM

Plaintiff Margarete Hyer appeals from successive orders dismissing her complaint with prejudice for failure to obey court orders and a subsequent order denying her motion for reconsideration. Having considered the record and applicable principles of law, we affirm.

I.

Plaintiff worked as an art teacher for the Ridgewood Board of Education ("BOE") from September 1998 to January 2020. During her tenure, she held class in a basement art studio at Benjamin Franklin Middle School. Plaintiff claimed "severe occupational asthma" due to unsafe working conditions, forcing her into early retirement. Specifically, plaintiff alleged the classroom "was continuously damp, dark, smelled musty, and had poor ventilation and circulation." Those conditions, perpetuated by defendants' alleged failure to remediate, manifested "visible black mold" and "active leaks inside and outside of the school building in or near the [a]rt [c]lassroom," purportedly causing plaintiff to become "extremely ill."

In July 2020, plaintiff filed a complaint and amended complaint against defendants. Defendants BOE, Dr. Daniel Fishbein, Angelo DeSimone, Anthony S. Orsini, Greg Wu and Steven Tichenor were named in counts one through five: intentional failure to correct an unsafe work environment (count one); a violation of the New Jersey Law Against Discrimination, N.J.S.A 10:5-1 to -50 ("NJLAD") (count two); retaliation in violation of the NJLAD (count three), violation of the Conscientious Employee Protection Act ("CEPA") (count four); and intentional infliction of emotional distress ("IIED") (count five). Defendants Sodexo, GCA Services Group Inc., and Aramark were named only in count six (negligence).

As a Track Three case, the matter had 450 days of discovery. Over the course of the next three years, the trial court entered seven orders extending discovery. Most of those extensions were requested by plaintiff. We focus on the orders and case management conferences leading to dismissal of the complaint with prejudice.

On June 9, 2023, 1,052 days from filing of the amended complaint, the court granted plaintiff's latest motion to extend discovery, setting October 15 as the deadline to produce expert reports and November 25 as the discovery end date. The order provided "that no further discovery extensions [would] be

considered without a case management conference, which counsel may request at any time." On July 20, counsel for the BOE notified the court that plaintiff recently produced over 10,000 pages of documents and requested a case management conference.

July 28, 2023 Case Management Conference

The court held a conference on July 28. BOE's counsel reported plaintiff had submitted "large document productions several days before [her] deposition," describing them as "five or six [d]ropboxes" exceeding "11,000 pages." Counsel further maintained that some of the documents produced were incomplete, irrelevant, or not Bates-stamped as the court had required. The judge questioned plaintiff's counsel regarding the delay in producing the documents more than "a thousand days into the case." Plaintiff's counsel stated plaintiff produced the documents in response to "multiple follow-up requests" by defense counsel during her deposition. Defense counsel countered that the document requests were for readily available information, such as names and addresses of relevant witnesses — information plaintiff should have produced months earlier.

The court issued an order that day setting a deadline of August 11 for plaintiff to supplement her document production and provide, among other

things, "HIPAA releases . . . for every care provider who [had] provided an index of all Bates-stamped documents."  The court precluded production of any documents after that date, absent a motion for relief.

On August 15, the BOE advised the court that plaintiff had needlessly reproduced documents.  It also advised the court about receipt of HIPAA authorizations for non-treating providers, medical reports from out-of-state physicians not identified during previous depositions, dental receipts, and reports of newly-claimed orthopedic injuries.  The BOE subsequently moved pursuant to Rule 4:23-2(b)(4) to dismiss the complaint for failure to comply with the July 28, 2023 order.  The BOE and the individual defendants[3] also moved to dismiss the complaint for failure to obey a court order pursuant to Rule 4:23-3(b)(3) and moved to bar the report of plaintiff's treating physician and medical expert, Dr. Scott McMahon, pursuant to Rules 4:17-4(e) and 4:10-2(d) for failure to provide associated discovery in the form of the doctor's treatment file and the articles he had relied on in preparation of his report.  Sodexo submitted a letter in lieu of motion, joining in the BOE defendants' motions.  Plaintiff opposed the motions and cross-moved to extend the discovery end date.

---

[3] One law firm represented the BOE as to the first and fifth counts.  Another law firm represented the individual defendants and the BOE on the remaining counts.

On October 23, the judge first addressed the motion to bar Dr. McMahon's report. Plaintiff's counsel revealed plaintiff had independently hired Dr. McMahon, signing a separate retainer for the doctor's services. Although she ruled the doctor's report admissible, the judge denied a request by plaintiff's counsel that defendants first sign a retainer prepared by Dr. McMahon to pay fees for his deposition appearance and as a condition of producing medical records reviewed and reports issued in connection with his evaluation.

Although agreeing that defendants were responsible to pay reasonable compensation for Dr. McMahon's deposition appearance, the judge stated:

> What possible authority is there to refuse to produce a record -- medical records, a file that he has as a treating doctor, or the documents he reviewed without the other side paying his fees or a court order? Where does that come from? You have an obligation. You're naming this expert. You have to produce these documents. You're in default. You, meaning the plaintiff, [are] in default.

The judge further determined plaintiff had not provided defendants with the necessary HIPAA authorizations required to obtain plaintiff's remaining medical records. The judge gave plaintiff's counsel "a last chance . . . to bring [him]self and [his] client into compliance with the [c]ourt's orders rapidly" by producing the missing authorizations as well as the names and addresses of

7 <span>A-2074-23</span>

relevant witnesses.

In response to an assertion by defense counsel that plaintiff had not provided dates for follow-up depositions on receipt of needed discovery, the judge stated: "I'm going to give you dates and deadlines, and if they're not met, the plaintiff's case is going to be dismissed with prejudice. We're not going to keep doing this." Referencing personnel changes at plaintiff counsel's firm, the judge reiterated:

> I understand that your firm movements and things like that have complicated it, but this is sort of a last chance, okay? You've got to bring yourself and your client into compliance with the [c]ourt's orders rapidly, or there are going to be more permanent consequences forthcoming.

In an order entered that day, the court, among other things, denied the motion to bar the report and ordered that plaintiff provide signed pertinent HIPAA forms, witness contact information, additional dates for plaintiff's deposition, Bates-stamped copies and indexes of all documents, medical literature relied on by Dr. McMahon to arrive at conclusions in his report, and Dr. McMahon's entire medical treatment file, including hand-written interview and treatment notes and medical records.

A-2074-23

On November 27, the court conducted a follow-up hearing to address those items it ordered on October 23. Defense counsel contended plaintiff produced only "a handful of documents" and that counsel had "no idea what they're for." Counsel added defendants received "a few new documents that are referencing testing and everything, and [documents] that could have been produced last year or even six months ago have not been [produced] and we have no idea why." Counsel summarized, "we're just getting document dumps after document dumps with different Bates numbers." "Ninety percent had been produced six times. The same documents over and over, and over, and over again." According to counsel, as a result of culling through voluminous documents to "find out what is new . . . what hasn't been produced and what is being inserted in here and hidden inside the documents," the BOE had "incurred well over $170,000 to date reviewing and re-reviewing . . . over . . . 15,000 documents."

Concerning assigning of different Bates numbers for the same document through multiple productions, plaintiff's counsel said, "[t]hat's possible because of the rate that we're getting and the way we're getting [documents] from our prior firm. It has not been smooth. I will agree to that. We're trying to do our

best in order to . . . organize it and index it."  In response, the judge observed, "[Y]ou were really behind the eight ball here, [counsel].  I understand that.  But instead of dismissing the complaint a month ago, I said, well, you'll have a last chance to clean it up."  The judge continued, "So . . . difficulty getting [documents] from the [former] firm is not a reason for their being disorganized, or not properly indexed or Bates stamped."  The judge further observed that plaintiff had contributed to the failure to comply with previous orders by directly retaining Dr. McMahon.  The following colloquy ensued:

> THE COURT:  So then it's really problematic because you can't even verify in any way that you're giving us everything that you gave the doctor because you didn't have it go through your office?
>
> PLAINTIFF COUNSEL:  Well, the doctor has to produce everything that he has.  And I will contact the doctor today.  Tell him I need the Lubitz material, the Boyle material,[4] and the 200 it -- items, and that he's required -- (indiscernible) that.  You know -- (indiscernible).
>
> THE COURT:  If your client had those files to provide to the doctor, why weren't they produced in discovery before now?  I mean, that's –
>
> PLAINTIFF COUNSEL:  I don't know.

---

[4] Counsel here refers to medical records prepared by other doctors, among the records plaintiff had not produced.

THE COURT: Right. Because your client is not cooperating. She's -- it may be the client more than you, . . . but things are being dribbled out at -- perhaps with some tactical calculations about whether they'll be helpful or not. That's not the way it works.

Turning to the pending motions to dismiss, the court considered options short of dismissal, reasoning:

And I'm suggesting that if I were not dismissing the complaint, is there any way to give plaintiff yet another chance to have the case survive in a way that would be fair to the defendants? And the only way I can see doing that is requiring plaintiff to reimburse the defendants for those costs. And I don't think I -- even at that, I don't know how -- how that -- if that would really be fair at this point in the case.

. . . .

[This case is] three years old. It's brought as a toxic tort case. There's been a failure to comply with court orders. I deferred this with sort of what I call the last chance. I don't know, I guess I thought of that October order as a last chance order. And that it's a month after the deadline of that order, and there's still not compliance with respect to documents certainly concerning Dr. [McMahon].

Addressing plaintiff's counsel, the judge continued:

I think that your client selectively produced. She decided to produce some stuff. Then she decided she wanted to send things to an expert. She sent to an expert things she hadn't sent to -- to you, things she hadn't sent to the -- to the defendants. And it's not acceptable. It's not tolerable. And it may be that

11

dismissal is the sanction -- the appropriate sanction. Dismissal with prejudice, at least of Counts One and Five.

. . . .

And -- and if -- if you had complied, if there was complete compliance with the . . . October 23rd [order], which was trying to get compliance with the July 28th order, then I might be extending discovery. But I'm not. I'm granting the Board's motion to dismiss Counts One and Five.

The court explained it had dismissed counts one and five due to "egregious" discovery breaches related to medical records and plaintiff's personal injury claims. The court permitted the remaining CEPA and NJLAD counts. Because those counts — two, three, and four — were applicable only to BOE, the court dismissed from the case defendants Sodexo, Aramark, GCA, and the individual school officials.

Finally, the judge extended the discovery end date on counts two, three, and four to May 31, 2024. It also ordered the BOE to "submit to plaintiff within one week of today's date any document requests related to the remaining claims (NJLAD and CEPA) for which it requires specific identification, by Bates/index number, of responsive documents (not limited to requests previously served)." With assent of plaintiff's counsel regarding the time frame, the judge also

ordered, "[p]laintiff shall respond within two weeks thereafter. All fact witness depositions shall be completed by February 16, 2024."

Motion for Reconsideration

Plaintiff moved for reconsideration of the court's November 27 ruling, and the BOE moved to dismiss the remaining counts for failure to obey the November 27, 2023 order pursuant to Rule 4:23-2(b)(3), contending plaintiff failed to properly respond to its document requests pertaining to the remaining counts as ordered. The judge addressed both applications on February 22, 2024.

Regarding reconsideration, counsel contended plaintiff had shown consistent, good-faith effort to comply with discovery orders coupled with "the extenuating circumstances over the last approximately eight months" warranting "an alternative to dismissal of the claims with prejudice[,] which is a little bit more time." The alleged extenuating circumstances involved plaintiff's lead counsel's health problems, since abated, and move from one law firm to the firm that then represented plaintiff, as well as delays resulting from the transfer of case documents that accompanied that change. Finally, counsel argued that the court deprived plaintiff of due process by dismissing counts against Sodexo, GCA and Aramark without proper notice.

The judge engaged in colloquy with plaintiff's counsel regarding the applicable standard for a motion for reconsideration, noting that the interest of justice standard applied. The judge found the moving papers "devoid of any persuasive discussion . . . over the interest of justice. They really recite disagreement with the [c]ourt's decision," amounting to no more than a repetition of arguments that were already made. Finally, in denying the motion for reconsideration, the court noted that it did not "lightly dismiss the claims with prejudice," but did so only "after at least four months of considering the issues raised and giving plaintiff opportunity," mindful of plaintiff attorney's health issues.

Regarding due process, the court noted that defendant Sodexo had joined the motion by letter and defendant Aramark orally joined the motion, which put plaintiff's attorney on sufficient notice of their position. Next, the court cited Doe v. Poritz, 142 N.J. 1, 106 (1995), for the proposition that due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. The court concluded plaintiff had been afforded that right. The court issued an order on February 22, 2024, denying plaintiff's reconsideration motion.

14

Dismissal of Remaining Counts

In furtherance of its motion to dismiss the remaining counts, the BOE maintained plaintiff had not complied with the November 27 order for discovery by failing to respond in a timely manner to the interrogatories, instead producing "another 4,000 plus-page production that was mislabeled, not organized, and [was not] referred to in [plaintiff's] answers to . . . interrogatories." Plaintiff maintained there was "a bona fide dispute" regarding the responsiveness of the documents provided and that the purpose of the court rules is to elicit responses, not punish a litigant. Counsel further contended that where "there's an opportunity to fashion another remedy that gives the parties an opportunity to resolve the case on the merits rather than on a procedural dismissal . . . that would be favored."

In her analysis, the judge explained at length why plaintiff's responses were deficient and why it was necessary to dismiss the complaint in its entirety.

> If this were, as they say . . . their first rodeo, if this were the first time we were looking at defendants' request for discovery or the plaintiff's . . . CEPA and LAD claims, and the first time that plaintiff was responding, the [c]ourt might be persuaded by plaintiff's counsel's argument to . . . consider some remedies short of dismissal. But there's a limit, right? There's a point at which the [c]ourt says that defendants have probably been saying for quite some time which is enough is enough. And these were the only claims

15

remaining. The requirement to index the produced documents and identify what discovery responses they pertained to, related to, and where they, . . . added to the claims was something that was -- has been outstanding for quite some time. As I indicated earlier at a conference on November 27th, after plaintiff has already suffered the dismissal of all the other claims, we mapped out a discovery schedule understanding that the [c]ourt expected compliance with its orders and plaintiff's action just since November 27th, right, a failure to provide any responses within the time frame agreed to, the amount of time requested by plaintiff with an understanding of what was going to be required,[5] a failure to provide all of the information even by the extended time that plaintiff said it needed, that the [c]ourt didn't grant, that the [c]ourt is not going to spend another time and require the defendants to continue spending fees to get plaintiff to do what it's a plaintiff's job to do when a plaintiff brings a lawsuit.

Citing plaintiff's consistent "failure to comply with court orders and failure to pursue her case properly," the court granted the motion to dismiss and entered an order on February 22, 2024, dismissing the complaint in its entirety with prejudice.

II.

"[T]he standard of review for dismissal of a complaint with prejudice for discovery misconduct is whether the trial court abused its discretion." Abtrax

---

[5] Here, the court referenced the two-week period contained in its November 27 order, as assented to by plaintiff's counsel.

16

Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995). A court abuses its discretion when its "'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)). "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to reconsider new information." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2022). We will uphold a trial court's discovery sanction "unless an injustice appears to have been done." Abtrax Pharm., 139 N.J. at 517. Legal questions are reviewed de novo. Zahl v. Eastland, 465 N.J. Super. 79, 92 (App. Div. 2020).

Plaintiff maintains the trial court abused its discretion in dismissing the complaint for two reasons. First, plaintiff contends the court's dismissal of the complaint with prejudice as to all defendants violated plaintiff's due process rights of notice and hearing. According to plaintiff, the court "sua sponte and without basis, dismissed the [a]mended [c]omplaint with prejudice as against every [d]efendant-[r]espondent" and "disregarded plaintiff's right to due process." Second, plaintiff contends that dismissal of the complaint was not warranted because dismissal for failure to make discovery is "the last and least

favorable option." According to plaintiff, the trial court could have extended discovery instead of dismissing the complaint with prejudice.

In response, defendants maintain dismissal was appropriate because plaintiff was provided adequate notice and a meaningful opportunity to be heard at the November 27 hearing. Moreover, defendants contend plaintiff deliberately and deceptively withheld discovery despite multiple discovery extensions.

Due Process

As recognized by the trial court, "the minimum requirements of due process of law are notice and an opportunity to be heard. The opportunity to be heard contemplated by the concept of due process means an opportunity to be heard at a meaningful time and in a meaningful manner." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001) (citing Doe, 142 N.J. at 106). Where, as here, plaintiff's refusal to comply with a discovery order was recurrent, "deliberate[,] and contumacious," Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 339 (1951), and plaintiff's attorney was provided with "sufficient advance notice" of defendants' applications for dismissal and "a meaningful opportunity to respond," dismissal of the complaint with prejudice is appropriate and comports with due process. Klier, 337 N.J. Super. at 84.

Our review of the record plainly shows evidence of plaintiff's delayed production of discoverable information, reproduction of thousands of unindexed documents, some of which were not responsive, and the continuous and deliberate withholding of discoverable documents in violation of court orders and at the expense of defendants. In all, the court entered seven orders extending discovery, affording plaintiff more than ample time to comply with the court's discovery orders and end dates. However, plaintiff unjustifiably violated those orders in particular by producing incomplete responses, non-responsive answers, or delayed responses. Plaintiff was on notice of the consequence of her non-compliance. We cite again the court's clear admonition of October 23: "I'm going to give you dates and deadlines, and if they're not met, the plaintiff's case is going to be dismissed with prejudice. We're not going to keep doing this."

The court's orders to dismiss with prejudice on November 27 and February 22 consistently applied an eminently fair approach, extending plaintiff additional time to comply with discovery and allowing counsel full opportunity to be heard before imposing dismissal with prejudice. In considering plaintiff's motion for reconsideration, the court correctly applied the interest-of-justice standard in support of its findings and conclusion of law. Lawson v. Dewar, 468

N.J. Super. 128, 134 (App. Div. 2021) (holding that motions for reconsideration are subject to the Rule 4:42-2 "interest of justice" standard where an order disposes of "fewer than all the claims as to all the parties," rendering it interlocutory; whereas the Rule 4:49-2 "palpably incorrect or irrational analysis" standard applies only to final orders disposing of all claims). The reasons articulated for the judge's with-prejudice dismissal, quoted extensively above, met the interest-of-justice standard.

In assessing whether the trial court abused its discretion in dismissing the complaint with prejudice, we consider also Rule 4:23-2(b)(3). If a party fails to provide court-ordered discovery, the court may issue "such orders in regard to the failure as are just," including striking the pleading or dismissing the action "with or without prejudice." R. 4:23-2(b)(3).

Dismissal with prejudice is appropriate when: (1) "the actions of the party show a deliberate and contumacious disregard of the court's authority," Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003); (2) the delay in discovery impairs the non-delinquent party's ability to "present a defense on the merits;" State v. One 1986 Subaru, 120 N.J. 310, 315 (1990); (3) "no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party, or when the litigant rather than the attorney was at fault," Abtrax, 139 N.J. at

514; or (4) "where the order for discovery goes to the very foundation of the cause of action," Lang, 6 N.J. at 339.

Although a judge has broad discretion in formulating sanctions under Rule 4:23-2, any sanction imposed must be "just and reasonable." Conrad v. Robbi, 341 N.J. Super. 424, 441 (App. Div. 2001). Dismissal of a claim for failure to comply with discovery is the "last and least favorable option." Il Grande v. DiBenedetto, 366 N.J. Super. 597, 624 (App. Div. 2004). A party must demonstrate prejudice as a result of the delay in prosecuting a matter to warrant dismissal. See Moschou v. DeRosa, 192 N.J. Super. 463, 466-67 (App. Div. 1984). "[I]t is the lack of availability of information which results from the delay that is, for the most part, determinative of the issue of substantial prejudice." Mitchell v. Charles P. Procini, D.D.S., P.A., 331 N.J. Super. 445, 454 (App. Div. 2000).

Our review of the record shows that plaintiff in fact consistently and deliberately failed to comply with discovery. That repeated failure caused defendants undue prejudice, forcing them to incur unreasonable legal expenses and substantially impeding their ability to defend against the allegations. By example, plaintiff submitted medical records to Dr. McMahon but refused to produce those records to defendants without payment. As noted by the court in

21

rendering its decision, plaintiff also failed to supplement her claims of unsafe work conditions, which went to the "foundation" of the bodily injury and negligence claims (counts one, five, and six). See Lang, 6 N.J. at 339. Plaintiff additionally failed to produce, in response to defendant's last requests, evidence of retaliation or discrimination, which went to the "foundation" of the NJLAD and CEPA claims (counts two, three, and four). Ibid.

The trial court considered lesser sanctions, including shifting costs. The court rejected cost-shifting, reasonably considering the age of the case and plaintiff's consistent pattern of failing to comply, even after issuance of repeated allowances and a final warning. On this record, we are fully satisfied the sanction of dismissal was justified.

The Supreme Court has observed:

> A litigant that deliberately obstructs full discovery corrupts one of the fundamental precepts of our trial practice – the assumption by the litigations and the court that all parties have made full disclosure of all relevant evidence in compliance with the discovery rules. A litigant who willfully violates this bedrock principle should not assume that the right to an adjudication on the merits of its claims will survive so blatant an infraction.

[Abtrax, 139 N.J. at 521.]

In sum, the court correctly found defendants were prejudiced because,

22

notwithstanding clear admonitions by the court, plaintiff's excessive delays and noncompliant document productions forced defendants to unnecessarily expend significant time and resources sorting through persistently incomplete and untimely discovery. This hampered defendants' ability to prepare for key proceedings and gave plaintiff an incurably unfair tactical advantage.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

23